Cynthia Lynn **LUCAS**, by and through her friend and natural guardian, David Lucas, Appellant,

v.

Albert **BLANKS**, Respondent.

No. 49225.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1962.

Thurman & Nixon and Jeremiah Nixon, Hillsboro, for appellant.

Samuel Richeson, Dearing, Richeson & Weier, Hillsboro, for respondent.

HOUSER, Commissioner.

Action for $60,000 damages for personal injuries sustained by three-year-old Cynthia Lucas, who was struck by defendant's automobile in a street intersection in DeSoto. Submitted to a jury on humanitarian failure to slacken, stop, swerve or sound a warning, there was a verdict for defendant. Plaintiff, pro ami, appeals, charging error in the giving of defendant's verdict-directing Instruction D–4 and burden of proof instruction D–5. Defendant defends the action of the court in giving the instructions, and further contends that plaintiff made no submissible case.

On the afternoon of September 11, 1959 defendant was driving his automobile north on Blow Street, approaching the intersection of Blow and Miller Streets. Blow runs north and south. Miller runs east and west. Blow is steeply downhill as a northbound driver approaches Miller. There is nothing to keep one from seeing 450 feet down the Blow Street hill. Miller is generally level on each side of Blow. Blow has

a blacktop surface, and is about 25 feet wide. On each side of the blacktop there is a gravel shoulder and ditch. It is 36 feet from the east ditch to the west ditch. On the southeast corner of the intersection there is a store where candy is sold, around which children congregate. On the northwest corner of the intersection there is an unpaved area between the traveled portion of Blow and the fence which bounds the corner lot, which area is used for sidewalk purposes. At a point five feet south of the intersection a ditch had been cut across Blow Street. The ditch, which extended across the east half of the pavement, was barricaded. James Long was unloading merchandise from the rear of a panel delivery truck parked on the south side of Miller, east of Blow, headed east. Three or four children were standing in the unpaved area on the northwest corner of the intersection, 4 to 6 feet from the edge of the blacktop.

Those who testified to the facts surrounding the collision were defendant; his nephew Ralph Price, who was riding in the front seat of defendant's automobile; James Long; and the three occupants of the Calvin Lambert automobile, which had been proceeding north on Blow about 200 feet behind defendant's automobile.

Defendant testified that he was driving on his right-hand side at a speed of 10, 15 or 20 m. p. h. at a point some 60 feet south of the barricade. He slowed down to a speed of 5 m. p. h. for the barricade, and swung over to his left in order to get around it. At the time he pulled to the left he saw some children, "three or something like that," standing on the sidewalk at the northwest corner of the intersection. That sidewalk is "a good four or five feet" from the edge of the blacktop of Blow Street. As his car first entered the intersection the children were in the same position. He entered the intersection at 5 m. p. h. Defendant did not see the child "run out" from the sidewalk as defendant entered the intersection. He saw her on the sidewalk, "and when [he] got around [the barricade] she

hit [his] car, she run into [his car.]" Defendant testified, "I seen her on the sidewalk and when I looked, she'd run across I guess, that's all I know." He thought "maybe" the child had to move a matter of 25 or 30 feet to get from the sidewalk to the edge of his car. She "was so quick" he "thought she was still standing there," but as he passed through the intersection the child came in contact with the left front fender of defendant's automobile. In his deposition defendant admitted that prior to the accident somebody hollered "Watch it, don't hit that girl," or "Watch out for the little girl in front of you." Defendant was going 5 m. p. h. at the time of the collision with plaintiff. The child was "not as tall as the fender." Defendant testified: "[I]n my driving sight, I couldn't see her, * * * I couldn't see whether she was on the left side when she run into it or not, I couldn't see her, she's too small." His windshield was clear. Defendant heard a thump, and he applied the brakes, bringing the automobile to a stop in 6 to 8 feet. The brakes were good. His car went about 2 feet after he "hit the brakes." After he stopped plaintiff was lying beside the left wheel near the side of the fender.

When defendant's automobile was 50 feet back from the intersection, Ralph Price noticed three or four children "approaching the intersection," moving south on the sidewalk on the west side or west edge of Blow Street. As the defendant's automobile reached and entered the intersection it was straddling the center line of Blow Street, getting back onto the right hand or east side. When the front end of defendant's automobile reached the south edge of Miller Street, the children "were still on the west edge, or west side of Blow Street * * * in the area of the sidewalk * * * the sidewalk ends there * * * they were at the intersection of Blow and Miller." Defendant's car was then traveling not more than 5–10 m. p. h. Price paid no attention to the children after seeing them on the west side of Blow. He did not see plaintiff dart or move into the street. When the front

bumper had gotten not more than 5 to 6 yards out into the intersection he heard a noise or thump. At the time of the occurrence of the impact defendant was heading back to his lane. Defendant was just beginning to accelerate and was going not more than 5–10 m. p. h. Defendant stopped immediately, and Price found the child lying on the street not more than a foot or two back from the extreme front end of the car, to the left of the left front fender. After the accident he examined a rubbed mark on the left front fender six or seven inches back from the light.

James Long, who was unloading his truck 25 feet from the place where the collision occurred, heard someone yell "Look out," and looked "toward the yell." At the time he heard the words "look out" the accident had not happened. He saw the automobile hit the child, who was standing in the street, not moving, facing the automobile, at a 45-degree angle. He said she was hit by the right front fender and front portion of the automobile and thrown 15 feet down the hill in front of the automobile.

Calvin Lambert, driving his car behind defendant's automobile, noticed defendant's brake lights go on just as defendant's automobile entered the intersection. He heard somebody yell at a time "fairly close" to the time the brake lights went on. From the driver's seat he could see to the left of defendant's automobile but he did not see any children come out into the street from the left side of the street or to the left of defendant's car, and did not see any children standing on the left side, or any child run into the side of defendant's automobile. When asked where this child came from he answered "She must have been already in the street, in front of the car or otherwise I'd of seen her," but admitted he "hardly ever" looked that far ahead, and that he was not watching that far ahead at that time.

Lambert's wife and daughter failed to see any children at any time. The daughter was sitting on the right side of the car. She saw no child come out from the right side of the road.

A police officer found fingerprints on the left side of the left front fender, 12–18 inches back from the headlight, after the accident.

Instruction D–4 follows: "The court instructs the Jury that if you believe and find from the evidence in this case that on the occasion in question the Defendant, Albert Blanks was operating his automobile Northwardly over and along Blow Street in the City of DeSoto, Missouri, at and near its intersection with Miller Street, and that as he approached the intersection there was an obstruction in his right hand side of Blow Street which required him to drive to his left in order to pass the said obstruction and proceed Northwardly along said street, and if you find that as the said Albert Blanks approached and entered the intersection of Blow Street with Miller Street the Plaintiff, Cynthia Lucas, was not on the traveled portion of Blow Street, but was off of the traveled portion of Blow Street on the West side thereof and in a position of safety, if you so find, and if you find that as the said Albert Blanks entered the intersection of Blow Street with Miller Street *that the said Cynthia Lucas proceeded into the intersection of Miller and Blow Streets and came into a position of imminent peril,* and that Albert Blanks' automobile was then so close that it was impossible for the Defendant to prevent his automobile striking Plaintiff, then you are instructed that you must return your verdict in favor of the defendant and against the Plaintiff." (Italics ours.)

Plaintiff first says the italicized words precluded the jury from finding that plaintiff came into a position of imminent peril prior to the time she was actually into the intersection, thereby narrowing and limiting the zone of imminent peril; that in the case of a three-year-old child the zone of peril could well have begun the moment she stepped off the sidewalk, or at some other point before she actually pro-

ceeded into the intersection; that the italicized matter further erroneously stated as a matter of law that the zone of imminent peril began in the intersection, whereas the place where the zone of imminent peril commences is a question for the jury. Plaintiff cites Catanzaro v. McKay, Mo. Sup., 277 S.W.2d 566; Ozbun v. Vance, Mo. Sup., 323 S.W.2d 771; Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, and other cases for the undeniable proposition that a verdict-directing instruction should not narrow and restrict the zone of imminent peril, but we find no fault with D–4 on this ground. Obviously, plaintiff was in no position of peril if she was in a "position of safety" on the west side of Blow Street, standing still at a point out of the line of travel of defendant's automobile. D–4 submits a situation wherein plaintiff, in such position of safety *on* the west side but *off* the traveled portion of Blow Street, proceeded into the intersection and came into a position of imminent peril as defendant's automobile entered the intersection. Plaintiff's trouble lies in the mistaken construction of the word "intersection" as used in D–4. Plaintiff construes the words "Cynthia Lucas proceeded into the intersection" inevitably and exclusively to mean "Cynthia Lucas proceeded to the portion of the intersection ordinarily traveled by vehicles." "Intersection" as used in D–4 has a wider and broader meaning, under the evidence. It refers not only to that area of the intersection ordinarily traveled by vehicles but also to the entire area of the rectangle made by the intersection of the north and south lines of Miller Street and the east and west lines of Blow Street, including the area between the sidewalk and the blacktop. D–4 does not confine the commencement of the zone of peril to the time plaintiff proceeded into the traveled portion of Blow Street. D–4 differentiates between "the intersection of Blow Street with Miller Street" and "the traveled portion of Blow Street," thus recognizing what the evidence discloses, i. e., that the intersection is wider than the blacktop. Nor do the words "Cynthia Lucas

proceeded into the intersection" necessarily refer only to her *entry* into the intersection. There was evidence from which the jury could find that she had already "entered" the intersection at the time she was standing in the group of children "on" the west side or west edge of Blow Street, "at the intersection," in the "area of the sidewalk," where the sidewalk ends. The quoted words could and doubtless should have been taken to refer to her movement as she passed across and advanced through the intersection. The jury was free to find—was not precluded by the wording of the instruction from finding—that the danger zone commenced, that plaintiff was in a position of imminent peril, at any time after she left her position of safety and started in the direction of the line of travel of the automobile; at any time after she began to move across, go forward over, or advance through, the intersection; at any time before she reached the blacktop, or traveled portion. It might have included her first step. Defendant was entitled to have any facts in evidence constituting a defense submitted to the jury. D–4 is not subject to the criticism that it narrowed and limited the danger zone. Martin v. Effrein, supra; Johnston v. Ramming, 340 Mo. 311, 100 S.W.2d 466, 469 [2–4].

Plaintiff next objects to D–4 on the ground that it does not indicate the degree of care required of defendant; does not contain all of the elements necessary to exonerate defendant, and lacks the requirement of a finding that defendant exercised the highest degree of care and was not negligent. D–4 is a converse of one of the essential elements submitted in plaintiff's main verdict-directing Instruction P–1 under the humanitarian doctrine, namely, the ability of defendant to have avoided striking plaintiff after she came into a position of imminent peril.

Its failure to require of defendant the exercise of the highest degree of care is not a valid objection. A converse instruction without such a requirement is more favorable to plaintiff than if defendant's duty

was thus limited. D–4 only authorizes a verdict for defendant if it was impossible, for any reason and upon any hypothesis, for defendant to have prevented his automobile from striking plaintiff. Rosenfeld v. Peters, Mo.Sup., 327 S.W.2d 264, 268 [3], and case cited; Burow v. Red Line Service, 343 Mo. 605, 122 S.W.2d 919, 920.

Its failure to detail *all* of the elements necessary to exonerate defendant, including the requirement of a finding of non-negligence, is not a valid objection. In a humanitarian case a defendant is always entitled to an instruction submitting as his defense facts shown by the evidence tending to disprove *any one* of the basic facts upon which the doctrine rests. Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W. 2d 562, 568. D–4 sufficiently hypothesized the facts bearing upon defendant's ability to avoid striking plaintiff. It was not necessary for D–4 to cover plaintiff's entire humanitarian submission and negative or converse each and every one of the several essential elements thereof.

Plaintiff objects to the use of the word "impossible" in D–4, claiming that the instruction failed to indicate "in what manner it was impossible, or what degree of care was required to determine the impossibility" and therefore gave the jury a roving instruction to bring back a verdict based on the lack of any degree of care. This contention is without merit for the same reason referred to in Rosenfeld and Burow, supra, namely, that the use of the word "impossible" instead of the expression "by the exercise of the highest degree of care" imposed on defendant a duty greater than that required by law and was more favorable to plaintiff than the wording for which she contends. Furthermore, Instruction P–3 told the jury that "It is the duty of the driver of every automobile upon the highways of this state to exercise the highest degree of care," and defined highest degree of care and negligence, so the jury was fully informed as to the degree of care required of defendant.

■ Finally, plaintiff attacks Instruction D–5, which follows: "The Court instructs the jury that the mere fact alone and of itself that the Plaintiff claims she was injured and had brought suit against the Defendant does not entitle Plaintiff to recover from the Defendant, but the Plaintiff can recover only if she proves that she was injured and that such injuries were caused by negligence of the Defendant as submitted to you in other instructions.

"The burden is not upon the Defendant to disprove such facts, but rather the law casts the burden upon the Plaintiff to make such proof by a greater weight or preponderance of the credible evidence in the case.

"Unless the Plaintiff has made such proof, it is your duty to, and you must, return the verdict in favor of the Defendant.

"By the term 'greater weight or preponderance of the evidence' is meant evidence which is more convincing as worthy of belief than other evidence in the case."

The first paragraph of D–5 contains a "mere fact" admonition, but plaintiff does not attack D–5 on that ground. (Although mere fact instructions are out of favor with this Court, it would be difficult to draw a more innocent and innocuous mere fact instruction.) Plaintiff's complaint is that this "burden of proof instruction" is complicated, misleading, contains several issues, and is "beyond the defendant's pleadings and beyond the evidence." We have examined Phillips v. Vrooman, 361 Mo. 1098, 238 S.W.2d 355, 360; Mitchell v. Dyer, Mo.Sup., 57 S.W.2d 1082; Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S.W.2d 58, and Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W.2d 498, cited by plaintiff. These decisions call for simplicity in *burden of proof instructions*, which is commendable, but a critical examination of D–5 does not lead to the conclusion that it is complicated. Nor is it misleading. On the contrary it is singularly simple, direct and informative. Its "mere fact" provision, of which plaintiff makes no complaint as such, is coupled with an approved, concise

instruction on the burden of proof, and an approved, concise definition of preponderance of the evidence. Plaintiff fails to support the assertion that D–5 goes beyond defendant's pleadings and beyond the evidence, and we are not sufficiently resourceful to find any such flaw in it.

Since plaintiff has not demonstrated reversible error in the instructions we need not consider defendant's alternative point that plaintiff did not make a submissible case of humanitarian negligence.

The judgment is affirmed.

HOLMAN, C., concurs.

COIL, C., concurs in result.

DALTON, P. J., and HYDE, J., concur.

WESTHUES, J., concurs in result and adopts the memorandum of COIL, C., as a separate concurring opinion.

HOLLINGSWORTH, J., concurs in result and concurs in separate opinion of WESTHUES, J.

For concurring opinion see 362 S.W.2d 744.