**Louis LOYD, (Plaintiff) Respondent,**
v.
**June MOORE, (Defendant) Appellant.**
No. 31617.

St. Louis Court of Appeals.
Missouri.
May 18, 1965.

James J. Amelung, Holtkamp, Miller, Risch & Amelung, St. Louis, for appellant.

William B. Kelleher, St. Louis, for respondent.

RUDDY, Presiding Judge.

A trial by jury of plaintiff's suit to recover damages of $7500 for personal injuries, sustained when plaintiff was struck by an automobile operated by defendant, resulted in a verdict for defendant. The trial court sustained plaintiff's motion for a new trial on the ground that Instruction No. 2 was prejudicially erroneous. Defendant has appealed the trial court's order, contending that Instruction No. 2 was a proper instruction and was not prejudicially erroneous and further contending that plaintiff failed to make a submissible case of failure to stop or slacken and give a timely warning under the humanitarian doctrine.

At the time of plaintiff's injury he was a letter carrier and on April 21, 1961, at approximately noon time, he picked up some mail from the relay boxes located on the northeast corner of Lillian and Goodfellow Avenues in the City of St. Louis, Missouri. Goodfellow runs north and south and Lillian runs east and west. After picking up the mail at these relay boxes he proceeded west on Lillian, crossing Goodfellow, having as his destination the north side of Lillian west of Goodfellow. While crossing Goodfellow and when he was within three or four feet of the center line of Goodfellow he stopped because some southbound cars had come to a stop at a stop sign at Lillian and while in this position he was struck by the car operated by the defendant.

At the beginning of plaintiff's case, plaintiff's Exhibit A was introduced and received in evidence without objection. This exhibit was a plat of the intersection of Lillian and Goodfellow drawn to a scale of one inch to 10 feet. This exhibit was placed in the presence of the jury and showed Lillian to be 40 feet in width and Goodfellow south of Lillian divided by a raised island, which island was approximately 3½ to 4 feet wide.

This island did not continue north of the south curb line of Lillian. The distance from the west curb of Goodfellow south of Lillian to the island was 47 feet and the distance from the east curb of Goodfellow south of Lillian to the island was 48 feet. From the northeast curb to the northwest curb of Lillian and Goodfellow was a distance of 77 feet and 6 inches. The plat showed three marked southbound lanes for travel on Goodfellow south of Lillian and 3 northbound lanes on Goodfellow south of Lillian. North of Lillian the plat showed two marked northbound lanes and two marked southbound lanes. The north and southbound lanes adjacent to the center line of Goodfellow north of Lillian are approximately 10 feet in width. The other north and southbound lanes at their intersection with the north curb line of Lillian are considerably wider, approximately 29 feet. The stop sign for eastbound traffic west of Goodfellow was approximately 20 feet west of the west curb of Goodfellow.

Plaintiff testified that after he picked up the mail at the relay boxes he proceeded west on Lillian crossing Goodfellow carrying his mail pouch and the mail on his left shoulder. The path he followed across the street was approximately 2½ feet north of the north curb line of Lillian Avenue. As he left the curb on the northeast corner he saw four cars coming south on Goodfellow and as he crossed from this point to the point where he was struck he saw no cars pass in front of him or behind him going north. He said no other cars, with the exception of the car driven by defendant, turned left off of Lillian to go north on Goodfellow. He walked to a point about 3 or 4 feet from the center line of Goodfellow and then stopped because the southbound cars had come to a stop at Lillian while he was walking across the northbound lanes of Goodfellow. He said these cars had stopped before he stopped. He thought the distance from the northeast curb to the point where he stopped was more than 30 feet. He said the lane in which he was stopped was the northbound

lane closest to center of the street and that he had gotten about one-half way across this lane when he stopped. The stopped southbound car nearest plaintiff was three to four feet west of the center line of Goodfellow with the front end even with the north curb line of Lillian. At the time plaintiff stopped he was about even with the driver of the southbound car. He said there was nothing to interfere with his vision to the west along Lillian Avenue as he was walking across the street; that there were no obstructions. He said he could see past the nearest car that was stopped in the southbound lane and that he could see over the hood of that car. He said defendant's car was about 18 inches from him when he first saw it and that he could not estimate the speed of her car at that time and could not say whether she was swerving or attempting to stop. Prior to seeing the defendant's car he had come to a stop and said that he did not stop because of seeing her car but stopped because of the obstruction caused by the stopped southbound cars.

When plaintiff saw defendant's car it was facing north. However, he said not due north. He did not know where the car came from and did not know that defendant was attempting to make a left turn from Lillian to go north on Goodfellow. As he walked from the northeast corner of Lillian and Goodfellow he was not aware of any traffic that might have been eastbound on Lillian and stopped at Goodfellow. He would not say there was none but he said he paid no attention. When defendant's car came in contact with plaintiff he was hurled through the air between ten and twenty feet. At the time he was struck, the southbound cars stopped at Lillian were still there. He said defendant's car stopped immediately after making contact.

The testimony of defendant showed that she was driving east on Lillian, west of Goodfellow, and as she got near Lillian she had to come to a stop behind two or three other cars ahead of her which had also stopped for the stop sign on Lillian and

Goodfellow. The intersection of Lillian and Goodfellow was protected by stop signs in all directions. She had to wait just a few seconds before she proceeded. She paid no attention to where the cars ahead of her went and as she came up to the stop sign, after the other cars had left, she saw three cars to the north of her coming south and two cars to the south of her coming north. After the other cars ahead of her had left and she had reached the intersection she proceeded to make a left turn to go north on Goodfellow. In doing so, she either slowed down or stopped her car to permit a westbound car to pass. To her right and proceeding north on Goodfellow was a red truck which she thought was carrying some long pipes. She permitted the truck to proceed ahead of her north on Goodfellow and then she started to follow behind it. In the meantime the southbound cars had come to a stop at the intersection stop sign and she did not see any people or any pedestrians between the truck which was proceeding north and the southbound cars on Goodfellow. Thereafter, she started to complete her left turn. She thought that at the time she was making her left turn her foot was between the gas pedal and the brake, explaining that she had to make more than a right angle turn to go north on Goodfellow and that she had to make a "V" turn. She came about three-fourths of the way out to the center of the intersection before starting to make her left turn. She first saw plaintiff when he was about two feet in front of her car at which time he was walking. She said she applied the brakes immediately and stopped the car in that two feet. She thought it was the right front fender of her car that came in contact with the plaintiff. She said at the time she first saw plaintiff he was near the lane next to the center line of the street. It seemed to her that he was a couple of feet from the line of this lane which would have placed him a full lane plus a couple of feet from the center line of Goodfellow. She said at the time she first saw plaintiff she thought she was going 10 to 15 miles per hour and added "if I was going that fast

because of the traffic conditions." She put on her brakes immediately. She said her car is 16 or 17 feet long and that three-fourths of her car, about 12 feet of it, was out of the intersection north of the north curb line of Lillian at the time of the impact and that the other part of her car, the remaining fourth, was still in the southbound lane next to the center of the street, blocking southbound traffic. She was on an angle at the time she made contact with plaintiff. She did not sound her horn at any time.

Robert Williamson, rebuttal witness for plaintiff, testified that he was an attendant and manager of the filling station on the northwest corner of Goodfellow and Lillian. At the time plaintiff was struck he was engaged in putting gas in an automobile and witnessed the occurrence just about the time defendant's car hit plaintiff. He did not know what direction defendant's car came from but that it was facing north at the time of contact with plaintiff. He saw plaintiff start across the street from the northeast corner but did not follow his travels after he started until he looked up at the time he saw plaintiff struck. He said contact was made between defendant's car and plaintiff about the middle of the northbound lane next to the center of Goodfellow. He said that if you would continue the sidewalk across the intersection plaintiff was four to five feet north of the sidewalk line. He said there were no southbound cars on Goodfellow at the time.

■ We take up defendant's first contention that plaintiff failed to make a submissible case for the jury. In determining whether plaintiff made a submissible case we review the evidence from a standpoint favorable to plaintiff, give him the benefit of any part of defendant's evidence favorable to him and not contradicted by his own testimony or not contrary to his fundamental recovery theory, give him the benefit of the reasonable inferences from all the evidence and disregard all of defendant's evidence unfavorable to plaintiff. Sperry v. Tracy Dodge-Plymouth Company, Mo., 344 S.W.2d 108; Daniels v. Smith, Mo., 323

S.W.2d 705; Wofford v. St. Louis Public Service Co., Mo., 252 S.W.2d 529; De Lay v. Ward, Mo.App., 262 S.W.2d 626.

▮ Under the humanitarian doctrine, no duty upon defendant to act is imposed until plaintiff comes into a position of imminent peril. The peril must be imminent, that is to say, certain, immediate and impending. A likelihood or a bare possibility of injury is not sufficient to create imminent peril. It is the duty of plaintiff in the instant case to establish by substantial evidence of probative value or by inferences reasonably drawn therefrom, a point at which the jury can find that he came into a position of imminent peril. Paydon v. Globus, Mo., 262 S.W.2d 601; Kirks v. Waller, Mo., 341 S.W.2d 860. And a jury may reasonably find that a plaintiff's zone of imminent peril is widened by reason of his obliviousness, if it further finds that such obliviousness should have been apparent to the defendant. Sperry v. Tracy, Dodge-Plymouth Company, supra. Likewise, plaintiff's obliviousness to defendant's approaching automobile is a constitutive element of a humanitarian case when submitted on the theory of failure to warn. Vietmeier v. Voss, Mo., 246 S.W.2d 785.

▮ The place where and the time when plaintiff came into and was in a position of imminent peril and whether or not plaintiff was oblivious to the approach of defendant's automobile and whether his obliviousness should have been apparent to defendant, were questions for the jury to determine. We are of the opinion, as we shall demonstrate, that the evidence in the instant case was sufficient to present a jury question as to each submitted hypothesis under the humanitarian submission, that is, that plaintiff came into and was in a position of imminent peril; that he was oblivious to the existing peril and that defendant had the means available to stop or to slacken her automobile and to timely warn plaintiff of the approach of said automobile.

▮ The reasonable findings which the jury was entitled to make based on the evidence in the case are that as plaintiff left the northeast corner curb he saw four cars to the right coming south. He then walked to a point three to four feet east of the center of Goodfellow, where he stopped because the southbound cars had come to a stop while he was walking and, as he said, had stopped before he stopped. In this same connection defendant when she was stopped at the stop sign on the southwest corner of the intersection saw three cars coming south and evidently realizing they had to stop at the stop sign on Lillian and Goodfellow for southbound traffic, proceeded to make her left turn. The jury could have reasonably inferred from her testimony that as she proceeded out to the point where she began to make her left turn, the southbound cars which she had observed had come to a stop. Therefore, while she was moving her car from the stopped position at the stop sign to the point where she proceeded to make her left turn, which was three-fourths of the way out into the western lanes of Goodfellow, plaintiff was walking from the northeast curb to the point where he stopped. The jury could have reasonably found that while he was thus walking defendant in the exercise of the highest degree of care could have seen plaintiff continuously after she had moved her car from the stopped position to the point where she began to make her left turn and to the place where she struck plaintiff, because the evidence most favorable to plaintiff shows no cars proceeding north on Goodfellow and, therefore, nothing present to obstruct defendant's vision of the area in which plaintiff was walking and standing. Defendant knew she was going to make a left turn and could have seen and observed plaintiff's obliviousness to the presence of her car. From these positions and these facts and circumstances the jury could have reasonably found that in some place as plaintiff walked across Goodfellow, including the place where he stopped, he was in a position of imminent peril of being struck by defendant's car, if defendant con-

tinued her left turn and proceeded north on Goodfellow. Such a course would require defendant to cross the path plaintiff was traveling or standing. We think there was sufficient evidence for the jury to find that plaintiff came into a position of imminent peril at some time after defendant left her stopped position and proceeded to make her left turn and by the exercise of the highest degree of care defendant could have seen that plaintiff was oblivious to the approach of her car and could have seen plaintiff when he came into a position of imminent peril.

As we said, we are convinced that the evidence was sufficient to present a jury question as to defendant's ability thereafter " * * * by the exercise of the highest degree of care, and with the means and appliances then and there at hand, and with reasonable safety to defendant's said automobile, its occupant and all persons and property thereat, to have stopped or slackened the speed of said automobile, and to have given an adequate and timely warning of the approach and proximity of said automobile, and that, by so doing defendant could thus and thereby have avoided striking plaintiff * * * *" all as submitted in plaintiff's Instruction No. 1.

■ On the question of defendant's ability to have given an adequate and timely warning of the approach and proximity of her automobile and by so doing to have thereby avoided striking plaintiff we have shown that defendant had a clear and unobstructed view of the entire intersection and particularly of the path traveled by plaintiff from the northeast corner of Goodfellow and Lillian to the point of impact. The evidence shows that the distance traveled by defendant from the stop sign to the point of impact, which was 2½ feet north of the north curb line of Lillian Avenue, according to the testimony of plaintiff, was approximately 89½ feet. This is not a case that requires niceties in calculations required in some humanitarian cases. The jury could have found that from the time defendant left the stop sign

on the southwest corner of the intersection to the point and time of impact, defendant in the exercise of the highest degree of care could have seen plaintiff continuously as he moved (more than 30 feet) from the northeast curb to the point of impact. The jury could have reasonably found that plaintiff's obliviousness extended his zone of imminent peril almost to the point where he left the northeast curb to proceed to the point where he stopped because of the southbound traffic. Considering the distance traveled by defendant, her opportunity to see plaintiff continuously after he left the northeast curb of Goodfellow and Lillian Avenue and the other facts and circumstances we have related, the question of whether defendant could have avoided striking plaintiff by sounding a timely warning, after plaintiff entered the zone of imminent peril, in time thereafter to have afforded plaintiff an opportunity to stop before walking into defendant's intended path or an opportunity to extricate himself from a stopped position was properly one for the jury. We think from these facts and circumstances, the jury could reasonably have found that the defendant could have sounded a timely warning to have avoided striking plaintiff, who was at all times in plain view.

On the question of defendant's ability to have stopped her automobile after plaintiff entered the zone of imminent peril and thereby have avoided striking plaintiff, we think the jury could have found that she had the ability to so stop her automobile. As we have shown, there was nothing to obstruct her view as she traversed the whole distance from the time she left the stop sign to the point of impact and, therefore, she had an unobstructed view of the path traveled by plaintiff from the northeast corner of Goodfellow and Lillian to the point of impact. We have shown that the distance traveled by defendant from the stop sign to the point of impact was approximately 89½ feet. Both plaintiff and defendant testified that defendant stopped her automobile immediately upon impact.

Defendant testified that she did stop her automobile within a distance of two feet. It will be recalled she testified that she was traveling, she thought, 10 to 15 miles per hour; that she first saw the plaintiff when he was 2 feet away from her and stopped her car in 2 feet. Her testimony that she stopped her automobile in 2 feet tends to confirm a low rate of speed. Since defendant was able to stop her automobile in 2 feet after she first saw plaintiff, the jury could infer and find that the condition of her automobile and its brakes were such that at the rate of speed mentioned she could stop in 2 feet. De Lay v. Ward, supra, 262 S.W.2d 1. c. 634. As said in the case of Lang v. St. Louis-San Francisco R. R., 364 Mo. 1147, 273 S.W.2d 270, 1. c. 275: "* * * there is no more cogent, probative evidence of what could and should have been done than what as a matter of indisputable fact was done. * * *

"* * * We have held that, when a car actually stops in a certain distance, there is no need of theorizing upon inability to stop in that distance."

■ Under the evidence the jury could have reasonably found that defendant was traveling at a low rate of speed and could have stopped her car in 2 feet. Defendant testified that at the time she first saw plaintiff she thought she was going 10 to 15 miles per hour, but added, "if I was going that fast * * *." If we assume that defendant was traveling at a speed of 10 miles per hour after she left the stop sign and as she was making her left hand turn, it can be demonstrated that she could have stopped short of the point of impact. While we do not judicially know the exact stopping distance of an automobile traveling at 10 miles per hour, after the brakes have been applied, we do know that, exclusive of reaction time, an automobile with good brakes traveling at 10 miles per hour can be stopped within 9 feet and the jury could so find. De Lay v. Ward, supra, 1. c. 635, 636; Nelms v. Bright, Mo., 299 S.W. 2d 483, 1. c. 490; Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, 12. Assuming defendant's reaction time to be ¾ of a second,

defendant would have traveled 10.99 feet before she could have reacted to the situation before her and applied the brakes. De Lay v. Ward, supra, 1. c. 635. This would make a total stopping distance, including reaction time, of 19.99 feet. If we assume that plaintiff was in the zone of imminent peril at the time defendant started to make her left turn, which the jury could have reasonably found, she was then at least 22½ feet from the point of impact, which was a sufficient distance to have enabled her to stop her automobile and thereby have avoided striking plaintiff. We merely point out this last assumption to show that under any and all circumstances defendant could, in the exercise of the highest degree of care, have stopped her automobile, after plaintiff was in the zone of imminent peril, in time to have avoided striking plaintiff. We think it was a question for the jury whether or not defendant in the exercise of the highest degree of care could have stopped her automobile and avoided striking plaintiff.

■ If in the exercise of the highest degree of care she could have stopped her car before striking plaintiff, under the same circumstances she could have slackened the speed of her car sufficiently, coupled with a timely warning, to have enabled plaintiff to step out of the path of the oncoming car. Sperry v. Tracy Dodge-Plymouth Company, supra, 344 S.W.2d 1. c. 112. This also was a question for the jury.

Under the evidence and the reasonable inferences therefrom plaintiff made a submissible case under the humanitarian doctrine of failure to stop or slacken and give a timely warning.

■ In defendant's next point she contends that Instruction No. 2 was a proper instruction and was not prejudicially erroneous, citing and relying on Lucas v. Blanks, Mo., 362 S.W.2d 736. Plaintiff contends that said instruction is not a proper converse of one of the essential elements submitted on plaintiff's main verdict directing instruction and, therefore, the giving of said instruction was prejudicially

erroneous and in support thereof cites the cases of Jolley v. Lowe, Mo., 362 S.W.2d 741, and Jolley v. Lowe, Lucas v. Blanks, Mo., 362 S.W.2d 744, an opinion in which the writer concurred in the result reached in Lucas v. Blanks, supra. Instruction No. 2 offered by the defendant and given by the court reads as follows:

"The court instructs the jury that if you find and believe from the evidence that after the plaintiff became in a position of imminent peril the defendant could not thereafter have stopped her car or sounded a timely warning and thus and thereby have avoided striking plaintiff, then you are instructed that your verdict shall be against the plaintiff and in favor of the defendant."

It is the contention of plaintiff that the instruction fails to require of defendant an objective standard of care and in the absence of other instructions to the jury defining the applicable standard of care required of defendant said instruction is prejudicially erroneous. No instruction given in the case defines the highest degree of care or negligence.

We think plaintiff's contention must be sustained. The three opinions cited by plaintiff and defendant were decided and handed down by the Supreme Court simultaneously. Only two cases were involved, namely, Lucas v. Blanks, supra; and Jolley v. Lowe, supra. The third opinion (362 S.W.2d 744) is one written by Judge Westhues in which he explained his concurrence in the result reached in Lucas v. Blanks, supra. However, Judge Westhues in his concurring opinion adopted in toto a memorandum prepared by Commissioner Coil, in which memorandum Commissioner Coil discussed the opinion in Jolley v. Lowe written by Commissioner Holman (now Judge Holman) and the opinion in Lucas v. Blanks written by Commissioner Houser. Both opinions (Lucas v. Blanks and Jolley v. Lowe) deal with the same type of instruction and the instruction involved was a humanitarian converse instruction

similar to Instruction No. 2 in the instant case. In the case of Lucas v. Blanks plaintiff objected to the instruction on the ground, among others, that it did not indicate the degree of care required by the defendant and lacked the requirement of a finding that defendant exercised the highest degree of care and was not negligent. In that case the writer of the opinion held that the failure of the instruction "to require of defendant the exercise of the highest degree of care is not a valid objection," explaining that a converse instruction without such a requirement is more favorable to plaintiff than if the defendant's duty was thus limited. The opinion, pointing to the language of the instruction, said:

"D-4 only authorizes a verdict for defendant if it was impossible, for any reason and upon any hypothesis, for defendant to have prevented his automobile from striking plaintiff. Rosenfeld v. Peters, Mo.Sup., 327 S.W.2d 264, 268 [3], and case cited; Burow v. Red Line Service, 343 Mo. 605, 122 S.W.2d 919, 920." (362 S.W.2d l. c. 740.)

Judge Westhues in his concurring opinion did not agree that the complaint made against the instruction was not a valid objection and in effect held that the instruction standing alone was reversibly erroneous for failure to have included the applicable standard of care. However, Judge Westhues concurred in the result reached by the writer of the opinion because, as shown in the opinion written by Judge Houser, another instruction in the case told the jury that, "It is the duty of the driver of every automobile upon the highways of this state to exercise the highest degree of care," (362 S.W.2d l. c. 740) and defined the highest degree of care and negligence. For this reason Judge Westhues concurred in the result reached by Judge Houser because he believed that the other instruction so informing the jury of the applicable standard of care, when read with the questioned instruction sufficiently supplied the missing requirement as to the applicable standard of care. Judge Hol-

lingsworth also concurred in the result and concurred in the separate opinion written by Judge Westhues. This was a divisional opinion and was concurred in by Dalton, P. J., and Hyde, J. Therefore, that part of the opinion written by Judge Houser holding that the instruction was sufficient in and of itself did not receive the concurrence of the majority of the Judges of the Division of the Court and is not authority in support of the sufficiency of the questioned instruction. The instruction can only be upheld when it is accompanied by another instruction defining and informing the jury as to the degree of care required of defendant. No such instruction was offered by defendant in the instant case.

In the case of Jolley v. Lowe, supra, written by Judge Holman and cited and relied on by the plaintiff herein, the questioned instruction reads as follows:

"The court instructs the jury that if you find under instruction No. 3 that the plaintiff was oblivious to the defendant and had entered a zone of peril, and if you further find and believe that the defendant was unable, in time thereafter to sound a warning or stop his automobile, and that in so doing he was not negligent, then your verdict should be for the defendant and against the plaintiff." (362 S.W.2d l. c. 743.)

This instruction in all pertinent respects is similar to instruction No. 2 in the instant case. The Supreme Court, speaking through Judge Holman, said:

"We have concluded that the instruction is erroneous for the reason that it is indefinite, incomplete, confusing and misleading. First, we note that there is no requirement in the instruction concerning the standard of care applicable to defendant. It should have contained a finding that defendant, in the exercise of the highest degree of care, was unable to sound a warning or stop the automobile in time to have avoided colliding with plaintiff. * * * The instruction, in the form in which it was given, permitted the jury to return a verdict for the defendant upon a finding that he was unable to take the timely action specified in order to avoid the casualty, irrespective of whether he was, at the time, exercising the highest degree of care in the operation of his automobile." (362 S.W.2d l. c. 743.)

For this and another reason indicated by the court, the court found that the giving of the instruction constituted reversible error. This opinion received the concurrence of a majority of the Judges of the Division and is authority in support of plaintiff's contention that Instruction No. 2 in the instant case is prejudicially erroneous. It appears from a reading of the Jolley v. Lowe case that no other instruction defining the applicable standard of care required of defendant was given.

We have examined the other cases cited by the defendant in support of her contention that Instruction No. 2 was a proper instruction but see no need to discuss them, inasmuch as the case of Jolley v. Lowe, supra, the latest pronouncement of the Supreme Court on the matter involved, conclusively holds that the giving of an instruction similar in all pertinent respects to Instruction No. 2, questioned in the instant case, is reversible error.

The order and judgment of the trial court granting plaintiff a new trial is affirmed and the cause is remanded.

WOLFE and ANDERSON, JJ., concur.