Mary N. JORDON, by Her Next Friend, J. D. Jordon, Jr., Plaintiff-Respondent,

v.

Gary JOHNSON, Defendant-Appellant.

No. 8562.

Springfield Court of Appeals.

Missouri.

Feb. 2, 1967.

Elroy S. Thomas, Buehner & Thomas, Joplin, for defendant-appellant.

A. L. Shortridge, Joplin, for plaintiff-respondent.

TITUS, Judge.

Plaintiff Mary N. Jordon was a seventeen-year-old pedestrian on March 27, 1965, when she was struck and injured at 6th and Wall Streets, Joplin, Missouri, by a 1962 Chevrolet driven by Gary Johnson, then sixteen years of age. Gary, as the damage suit defendant disappointed with the trial court's refusal to sustain his motion for directed verdict at the close of the evidence, and dissatisfied with the $5,000 jury verdict returned for Mary, has appealed. Defendant's alleged humanitarian negligence in failure to slacken speed, swerve, or sound a warning constituted plaintiff's sole submission to the jury. The extent of plaintiff's injuries and the amount of the verdict are not issues on appeal.

Inseparable to every appeal by a defendant on the complaints here voiced is a determination if a submissible case was made,[1] and we are obliged to strain the record through a judicial colander so constructed that only the evidence and the logical conclusions therefrom favorable and advantageous to plaintiff sift for consideration. This sieve, mystically endowed with metamorphic efficacy, also tends to change im-precise estimates, judgments, and assumptions into precise and exact mathematical certainties.[2]

Running north and south, Wall Street is a one-way thoroughfare for northbound traffic with its two traffic lanes divided by an interrupted white line. Parallel parking, except where driveways appear, is permitted on either side of Wall. Sixth Street (running east and west) intersects Wall at right angles and accommodates one-way traffic for eastbound vehicles. Each street is paved, forty feet wide, and from the pictorial evidence looks to be fairly level for at least a block in all directions from the intersection. Pedestrian crosswalks appear on all sides of the intersection. The north lane designed for east or west foot passage across Wall is eight feet wide and outlined by two four-inch parallel stripes. The accident occurred on dry pavement, near noon, and in "broad daylight." A stop sign located on the southwest corner of the intersection and intended for observance by eastbound traffic on 6th Street was the only traffic control present.

The vehicle driven by defendant is described as being five or six feet wide and sixteen or seventeen feet long. It was equipped with power brakes and power steering said, along with the general mechanical condition, to be in "good" working order.

Plaintiff (who professes to have no remembrance of the accident or the circumstances immediately before and after) and her fiance, Robert Lloyd Provance, were traversing Wall hand-in-hand when plaintiff was struck in the west or left traffic lane on Wall by the northbound Chevrolet. Provance says plaintiff was to his right when they stopped on the curb at the north-

1. Gibbs v. Bardahl Oil Co., Mo., 331 S.W. 2d 614, 620(1); Hart v. Midkiff, Mo., 321 S.W.2d 500, 505(4); Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73, 77(11).

2. Lowes v. Union Electric Co., Mo.App., 405 S.W.2d 506, 507(1); Newell v. Pe-ters, Mo.App., 406 S.W.2d 814, 819–820 (8); Immekus v. Quigg, Mo.App., 406 S.W.2d 298, 300(1); Miller v. Ranson & Co., Mo.App., 407 S.W.2d 48, 53(3); Montgomery v. Petrus, Mo.App., 307 S W.2d 24, 27(4); Dillon v. Hogue, Mo App., 381 S.W.2d 599, 602.

east corner of the intersection to permit a car traveling north on Wall to pass and park parallel to the east curb north of their position. Ere stepping from the curb Provance looked south on Wall. He could see at least a block in that direction and observed no approaching traffic. The couple then started crossing Wall (from east to west) "at a continuous pace * * * an average gait * * * a normal walk * * * something like three miles an hour." Provance related, "I don't guess I did" look again south after leaving the sidewalk until the pair neared or reached the center of Wall, at which time Provance first sighted defendant's car. The vehicle was then at "about the middle of the intersection," its right side was "three or four steps" west of the centerline of Wall, and traveling "somewhere between fifteen and twenty." Provance stepped "back quickly" and jerked on plaintiff's hand as fast as he could. He stepped clear of the car but did not succeed in pulling plaintiff to safety. Provance asserts the brakes on the Chevrolet were not applied until after plaintiff was struck. It is agreed defendant did not sound the horn on the Chevrolet or swerve before the collision.

As may be expected, there is a difference among the witnesses on several scores. Some say Provance and plaintiff were crossing Wall in the crosswalk while others place them ten or fifteen feet north of the lane. There is likewise a dispute as to whether plaintiff was north or south of Provance when struck, and the witnesses place her as being near the centerline up to two or three steps west of center of Wall when the casualty occurred. The investigating police officer stated tire marks made by the Chevrolet were eighteen feet long and started "from the north line of the crosswalk to the front of the car, all in the west lane of Wall Street." Viewing accident scene pictures, a photographer estimated the right tire marks to be five feet west of the centerline, and the left tire marks to be six or seven feet east of the west curb on Wall. The right front corner

and front bumper of the automobile struck plaintiff. The only witness interrogated on the subject stated no vehicles were parked in the first two parking spaces north of 6th Street and on the west side of Wall.

Defendant first entered onto Wall a block south of the accident intersection and changed into the left or west traffic lane when he was a half-block away. At about this point a glance at the speedometer indicated he was traveling seventeen to eighteen miles per hour. As he neared the south edge of the intersection and having previously looked right, defendant's attention was directed (according to him) to a car approaching the intersection from the west on 6th Street. This vehicle stopped when defendant was about even with it and "I guess it would be probably 30 feet, maybe more or less" that separated the defendant's car and plaintiff when he first observed her. Defendant did not see Provance and plaintiff step off the east curbing, but did "remember seeing them come into the right lane." When he first saw her, defendant said he was traveling seventeen miles an hour ("I guess"), and "put on the brakes—I knew she wasn't looking my way." The car, according to defendant, was "stopped" or "just stopping" when plaintiff was struck, and actually was stopped in eighteen feet after the brakes were applied. From what defendant and the other witnesses related, the jury would have no problem in concluding plaintiff was oblivious to the approach of the Chevrolet.

Confusion abounds as to whether or not there was a vehicle in the east or right traffic lane on Wall at the time of the accident. Provance says there was none. Defendant says there was such a vehicle, but his testimony leaves one uncertain as to where it was. He at one time said this alleged northbound vehicle traveling in the east lane had "not completely" passed through the intersection before he entered it. Another time defendant said, "Well, yes, just as I was leaving the intersection—or not in the intersection, there wasn't any car." A third reference was that the car

in the right lane "was just leaving" the intersection as defendant entered, and still at another time defendant said, "I remember a car going by fast, on my right, as I saw her." A witness that had been following plaintiff and Provance testified there was a northbound vehicle traveling in the east lane which stopped in the middle of the intersection to permit Provance and Mary Jordon to pass in front of it before defendant's car arrived at the scene. An eye-witness, in addition to Provance, did not remember seeing such a car, while still another person swore there was such a car but that it did not stop thereby causing plaintiff to hurry from the east lane into the path of the Chevrolet. This witness also asserted that when plaintiff reacted to avoid being struck by the northbound car in the east lane, defendant's car was then thirty-five to fifty feet south of the intersection.

The jury was at liberty to believe none, part, or all of the testimony of any witness,[3] and we must disregard defendant's evidence, except where it benefits plaintiff, and permit plaintiff a choice of the most favorable combination of facts and inferences. See cases in Footnote 2. There is no denial in this case plaintiff was in fact oblivious and apparently oblivious of any danger from defendant's automobile from the time she left the east curb until she was struck by the car or jerked by Provance. Defendant's duty to act under the humanitarian doctrine, i. e., call into action every means at hand to avoid injury, arose when plaintiff was at a place where it was or should have been reasonably apparent to defendant she was oblivious to his approach and intent upon entering into his path.[4] The exact place where and the time when plaintiff came into and was in a position of imminent peril were questions for the jury to determine, and with plaintiff oblivious to her peril the jury could find the zone of immediate danger more broad than that set in cases lacking such an element.[5]

Defendant testified the Chevrolet actually stopped in eighteen feet after the brakes were applied, so we need not theorize upon his ability to stop in that or some other distance. Loyd v. Moore, supra, Mo.App., 390 S.W.2d 951, 957(9); Lang v. St. Louis-San Francisco Ry. Co., 364 Mo. 1147, 273 S.W.2d 270, 275. In the absence of proof of some other time, the majority of courts taking judicial notice of reaction time place it at three-fourths of a second. See collection of cases in Annotation, 84 A.L.R. 2d § 3(b), pp. 982–983. As it approached the intersection, the Chevrolet's speed, according to defendant, was seventeen or eighteen miles an hour, or 24.9 to 26.4 feet per second. Reaction time at such speeds would consume 18.7 to 19.8 feet making the total stopping distance 36.7 to 37.8 feet. So without splitting seconds or dealing in fractions of feet, the jury reasonably may have found defendant could have stopped short of striking plaintiff had he undertaken to do so at any place fifty feet or more south of the point of impact.

Provance testified he and plaintiff were walking three miles an hour as they were crossing the street, or at the rate of 4.4 feet per second. Without affording plaintiff any benefit of elapsed time for deceleration during braking, the Chevrolet would be 1.89 to 2 seconds away from the point of impact when it was fifty feet south of that point and at the same time plaintiff would be 8.3

3. Kickham v. Carter, Mo., 314 S.W.2d 902, 905(1); Bell v. Pedigo, Mo., 364 S.W.2d 613, 616(4); Rawley v. Eilermann Transfer Co., Mo.App., 390 S.W.2d 937, 940 (3); Appelhans v. Goldman, Mo., 349 S.W.2d 204, 208(9); Mayer v. Orf, Mo., 404 S.W.2d 733, 734–735(3, 4).

4. Hendershot v. Minich, Mo., 297 S.W.2d 403, 408(7); Wofford v. St. Louis Pub. Serv. Co., Mo., 252 S.W.2d 529, 531(2);

Silver v. Westlake, Mo., 248 S.W.2d 628, 632(1, 2); Newell v. Peters, Mo.App., 406 S.W.2d 814, 821(9).

5. Daniels v. Smith, Mo., 323 S.W.2d 705, 711(6); Loyd v. Moore, supra, Mo.App., 390 S.W.2d 951, 955(5); Sperry v. Tracy Dodge-Plymouth Co., Mo., 344 S.W.2d 108, 111(3); Bafaro v. Pezzani, Mo.App., 376 S.W.2d 631, 633; Kuehn v. Hahn, Mo., 380 S.W.2d 445, 448.

to 8.8 feet east of the place she was hit. If the jury selected five feet west of the center line of Wall as being the point of impact (which it logically could do under the evidence relating to the place of the right skidmark), the jury then may have concluded plaintiff was but 3.3 to 3.8 feet east of the centerline when defendant had the ability to stop and was then in a position of immediate danger discoverable by defendant. This would be a permissible conclusion even if there was, in fact, another car in the intersection in the east traffic lane. However, the jury was free to believe, as Provance testified, there was no northbound car in the east traffic lane on Wall at any time before or at the time of the accident, or that if there was such a car it did not impair defendant's view of the entire intersection. Under such assumption, if plaintiff walked in the street from the east curb a distance of twenty-five feet (half the width of the street plus five feet to the point of impact) she would have taken 5.67 seconds walking at three miles per hour. At the commencement of that period defendant's car would have been 141.2 to 149.7 feet south of the collision point and plaintiff would or should have been in plain view all the time the Chevrolet was traversing that distance. We do not undertake to speculate why plaintiff did not submit this case to the jury on the failure to stop. Nevertheless, "It follows almost without saying that if in the circumstances of this record [defendant] could have stopped his automobile he certainly could have swerved or slackened speed and thereby avoided striking [plaintiff]. Hendershot v. Minich, Mo., 297 S.W. 2d 403. And, '[o]f course, a warning could have been given in an even shorter time and distance.' Hildreth v. Key, Mo.App., 341 S.W.2d 601, 607; De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628; Schmitt v. Shuplak, Mo.App., 42 S.W.2d 959." Losh v. Benton, Mo., 382 S.W.2d 617, 619.

Had the jury, which was permissible, believed plaintiff was or should have been visible to defendant from the time she left the curb and entered the street, "the evidence supported a reasonable finding that plaintiff was in imminent peril when she reached a place halfway to the point at which she was struck". Sperry v. Tracy Dodge-Plymouth Co., supra, Mo., 344 S.W. 2d 108, 111. If the total distance walked was twenty-five feet, it took plaintiff 2.84 seconds to cover the last half thereof, and defendant was 74.8 to 70.6 feet south of the point of impact at the time plaintiff was in imminent peril and defendant should have known thereof.

Mike Ryan, a defendant's witness, was at the northwest corner of the accident intersection at the time of the casualty. Ryan reported that plaintiff stepped westward from the path of the alleged northbound car traveling the east lane (which he says did not stop) when defendant's Chevrolet was thirty-five to fifty feet south of the intersection. At face value this testimony put plaintiff in full view of defendant when his car was seventy-five to ninety feet south of the north crosswalk, and likewise rid the right lane of traffic at a time when the jury could have found a right swerve by defendant could have avoided plaintiff's injury.

We could consume more space in reciting calculations on each conceivable set of imaginable factual situations possible under the evidence in this case. The arithmetic heretofore articulated should be sufficient, however, to disclose the jury could reasonably have found defendant had the time and the means to avoid injuring plaintiff by slackening speed, swerving, or sounding a warning.

Defendant's argument is predicated on his assumption "the front end of defendant's car was only 30 feet from plaintiff * * * when she entered the zone of imminent peril." This is based upon the testimony of defendant that he did not see the plaintiff until he was "probably 30 feet, maybe more or less" from her. "It is not enough, in order to exculpate defendant, that he did not see plaintiff until within thirty feet

of her. There remains the question whether or not he could and should have seen her in obvious peril sooner and in time thereafter to have avoided striking her." Pitcher v. Schoch, 345 Mo. 1184, 139 S.W. 2d 463, 467. The jury was not bound to accept every utterance of defendant to the exclusion of the other evidence, and most assuredly was not required to believe that when defendant first saw plaintiff was the earliest opportunity he had to do so in the exercise of the highest degree of care.

We find the trial court did not err in submitting the case to the jury and the judgment entered on the verdict returned is affirmed.

STONE, P. J., and HOGAN, J., concur.