TRANSCONTINENTAL INS. CO. v.
STANTON.
No. 5235.

Circuit Court of Appeals, Seventh Circuit.
Jan. 18, 1935.

936

Ernest H. Hicks, Robert J. Folonie, and C. Oscar Carlson, all of Chicago, Ill., for appellant.

Francis L. Boutell and Jerome J. Sladkey, both of Chicago, Ill., for appellee.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

The action was on appellant's policy for $8,775 issued to appellee indemnifying her against loss on jewelry and furs as in the policy itemized and valued at a total of the face of the policy. The declaration charged the loss to appellee, by theft, of items of jewelry scheduled in the policy at a total of $7,900, and of the market value of that amount.

To the declaration appellant filed the general issue and two amended pleas, which will hereinafter be more fully described. To the special pleas appellee's demurrer was sustained.

At the close of the evidence the court directed the jury to find that the articles alleged to have been stolen were in fact stolen from appellee, and that the only question upon which the jury should pass was the value of the jewelry at the time of the theft, and for such value to return a verdict for appellee. The verdict was in favor of appellee for $7,475, for which judgment was rendered.

Error is assigned on sustaining the demurrer to the two amended special pleas. These pleas set forth a provision of the policy that "This entire policy shall be void if the Insured or his Agent has concealed or misrepresented any material fact or circumstance concerning this Insurance or the subject thereof"; and they allege that before the making of the policy appellee stated and represented to appellant in writing, among other things, that no company or Lloyds had ever canceled insurance for appellee, which statement was then false and untrue in that prior to the time of appellee's application for the policy in suit the Fireman's Fund Insurance Company of California had issued and delivered to appellee its policy insuring appellee against loss or damage of the same nature upon the same property as that described in the policy in suit, and that afterwards, on August 21, 1930, the Fireman's Fund Insurance Company notified appellee of cancellation of that policy according to the terms thereof, and that such policy was in fact canceled by that company prior to application for the policy in suit, and that such cancellation was a material fact or circumstance concerning the policy in suit, and that thereby appellee concealed and misrepresented to appellant a material fact concerning the insurance, but for which appellant would not have issued its said policy.

There is set out in the pleas this provision in the application for the policy in suit as follows:

"Signing this form does not bind the proposer or the insurer to complete the insur-

ance, but it is agreed that this form shall be the basis of the contract should a policy be issued.

"If any of the above questions have been answered falsely or fraudulently such contract is null and void and all claims thereunder shall be forfeited."

No other part of the application for the policy in suit was set out in the pleas and nowhere appears.

■■ The policy itself makes no reference to any application, and there is nothing therein which purports to make an application or any other writing a part of it. The policy constitutes the entire contract. Representations of facts concerning the insurance contained in other writings to which the policy makes no reference can, in case they are untrue, affect the policy only to the extent that they are material. United States Fidelity & Guaranty Co. v. First Nat. Bank, 137 Ill. App. 382, affirmed 233 Ill. 475, 84 N. E. 670; Minnesota Mutual Life Ins. Co. v. Link, 230 Ill. 273, 82 N. E. 637.

Indeed, the policy itself specifies that it shall be invalid in case the insured has concealed or misrepresented any *material* fact concerning the insurance. We are of the view that the alleged concealments or false representations as they are set forth in the amended special pleas do not of necessity indicate that they were material to the insurance.

Where a policy is as broad as the pleas allege of the Fireman's Fund policy and of the policy in suit, there is practically no limit to the manner or character of loss for which the company undertook the indemnity. It specifies loss generally, without qualification, save as to certain exceptions not here of consequence. In such wide coverage there might be various reasons in any single department of the coverage wherefor a company might wish to relieve itself of a liability—reasons which might be entirely immaterial in the matter of subsequent insurance. The place where the property was kept might have been deemed insecure (and it does not appear from the pleas that the location of the property insured was the same in the two policies). Fire or other particular hazard might have been increased, wherefore the company might have chosen to cancel. The conditions which induced the cancellation may have been removed or never have been present respecting the policy in suit. The insured under the Fireman's Fund policy may have been dissatisfied with the insurance and refused to pay for it, in which case the policy would likely be canceled. In such and other conceivable situations the nonmateriality of the prior cancellation as bearing on subsequent insurance would be quite plainly indicated.

■ Pleadings are taken most strongly against the pleader. Where, as in the policy in suit, concealments and misrepresentations by the insured respecting the policy must be material in order to avoid the policy, a defense charging such representations or misrepresentations must affirmatively point out wherein they are material; and in this respect the amended special pleas are insufficient. Hodgson v. Marine Ins. Co., 5 Cranch (9 U. S.) 100, 110, 111, 3 L. Ed. 48; Cooley's Briefs on Insurance, p. 1924.

■■ Appellant urges there was error in the court's direction to the jury to find that the jewelry was stolen. The correctness of this charge depends on the evidence upon that question. If all the evidence thereon, with all its reasonable implications, sustained the proposition that the jewelry was stolen, the court very properly directed the verdict. In Chicago, M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 566, 70 L. Ed. 1041, the court said:

"It is the duty of the trial judge to direct a verdict for one of the parties when the testimony and all the inferences which the jury reasonably may draw therefrom would be insufficient to support a different finding."

And in Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 233, 74 L. Ed. 720, the court said:

"The decisions establish a more reasonable rule 'that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.' Improvement Company v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867; Pleasants v. Fant, 22 Wall. 116, 122, 22 L. Ed. 780."

"Where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury. People's Savings Bank v. Bates, 120 U. S. 556, 562, 7 S. Ct. 679, 30 L. Ed. 754; Southern Pacific Company v. Pool, 160 U. S. 438, 440, 16 S. Ct. 338, 40 L. Ed. 485."

From our examination of this record we find no substantially contradictory evidence respecting the theft, and in our judgment the evidence supporting it does not disclose such inherent improbabilities therein as to have required submission of that proposition to the jury. Kelly v. Jones, 290 Ill. 375, 125 N. E. 334, 8 A. L. R. 792; People v. Davis, 269 Ill. 256, 110 N. E. 9; Chesapeake & O. R. Co. v. Martin, 283 U. S. 209, 51 S. Ct. 453, 75 L. Ed. 983.

Appellee and her husband occupied a quite spacious apartment on the fifteenth floor of an apartment building having seventeen floors. Appellee had a card party in her apartment in the afternoon, and she afterwards put her jewelry in a drawer of a bureau in her bedroom. Some time about 5:30 o'clock she left the apartment, going down the front elevator and out to buy some supplies for breakfast. Returning about a half hour later she learned that her husband had come home a few moments before her return, and that he found the front door double locked; the bedroom in great confusion, and the jewelry gone. Notice was at once given the police and to appellant's agent, who lived in the same building.

It was found that in the maid's room the window was open, and there were indications of some one having stepped on the fire escape, which was within short distance of that window. There was considerable evidence as to the manner of use of the fire escape and the facility with which persons could reach and ascend and descend it. There was also evidence of a service elevator which opened into a hall and which was easily accessible, save that between the hall and the apartment there was a door which was, or ought to have been, locked.

But this policy was not one of those which insured only against loss by burglary through breaking in from without. It covered loss from any source except the few which the policy excepted and are not here in question. It was not essential to recovery that the loss was shown to have occurred through burglary or theft. If the insured shows a loss of the insured property, it is immaterial how the loss was occasioned, so long, of course, as the insured had no purposeful participation in it. That appellee actually lost the insured jewelry the record establishes beyond dispute, direct or inferential.

The only semblance of a contradiction which the record discloses is as to the time which elapsed between the insured's leaving the apartment and the arrival there of her husband. In the very nature of things it is usually difficult, if not impossible, minutely to fix such times. Appellee said at the trial that it was about 5:30 when she left. At one time she expressed the view that it was 5:35. At another time she said it was between 5 and 5:30—that she could not fix the time exactly. And so with reference to the time her husband arrived. He said it was about twenty minutes to 6, but it may have been a few minutes earlier or later. The fair conclusion from the evidence is that, whatever the interval may have been, it was long enough to permit some one to get into the apartment, search the bureau drawers, find the jewelry, and escape with the loot.

We may speculate endlessly as to whether or how it was possible for some malefactor to watch for and find opportunity to enter when this or some other apartment of the building was left alone. We do know those things occur, and that those who undertake such raids upon the premises and property of others become highly skilled in their chosen profession, and justly famed "for ways that are dark and for tricks that are vain." It is not to be wondered that ofttimes their depredations are accomplished without leaving tangible clue of the means or manner thereof. So, even though it may not appear that a particular theory advanced to account for the loss of the jewels had been definitely established, if, as here, it does appear that bona fide loss of them has in fact been sustained by the insured, this is sufficient to warrant recovery under the policy. We find no error in the court's direction complained of.

It is complained that, over objection, appellee testified that the fire escape was within an easy step of the window in the maid's room, the objection being to the employment of the words "easy step" instead of specifying the actual distance. Some witnesses did give the distance at about three feet, one stating it to be thirty-five inches. But we do not think the use of the expression "easy step" was objectionable. It is of common knowledge that distances are frequently measured by pacing or stepping and assuming a pace or step to be three feet. (See dictionaries.) This has been customary from time out of memory. The jury could not have been misled by the witness' employment of this expression to indicate the distance.

The judgment is affirmed.