**Cyrus SEE, Jr., Respondent,**

v.

**Loren KELLY, Appellant.**

**No. 23507.**

Kansas City Court of Appeals.

Missouri.

Oct. 1, 1962.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 3, 1962.

Jack B. Robertson, Rogers, Field & Gentry, Kansas City, for appellant.

Clifford Jarrett, Walter A. Raymond, Kansas City (Raymond, West & Cochran, Kansas City, of counsel), for respondent.

MAUGHMER, Commissioner.

This case arose out of two automobile collisions which involved three vehicles. Plaintiff Cyrus See, Jr., driver of one car, sought damages from the other two drivers for personal injuries which he allegedly sustained. The verdict and judgment was for plaintiff in the sum of $7500 against the defendant Loren Kelly, but for the defendant William Audsley. The only appeal is by Loren Kelly.

 One of appellant's main contentions on appeal is that his motion for directed verdict should have been sustained because the only issue of negligence submitted was "failure to keep a constant and careful lookout", and there was no evidence to authorize such submission. The rule for appellate determination of this point was stated in Daniels v. Smith, Mo., 323 S.W.2d 705, 706:

"In order to determine whether the court erred in ruling the motion presented at the close of all the evidence a review of the evidence favorable to plaintiff is required. We shall state the evidence in the light most favorable to plaintiff, give him the benefit of all favorable inferences arising therefrom and disregard defendant's evidence unless it aids the plaintiff's case. Mincielli v. Sloan's Moving & Storage Co., Mo.Sup., 303 S.W.2d 17, 19; Wattels v. Marre, Mo.Sup., 303 S.W. 9, 10 [66 A.L.R.2d 433]."

We shall therefore summarize the evidence from the viewpoint of plaintiff. The accident occurred at about 5:00 p. m., November 27, 1958, within the city limits of Liberty, Clay County, Missouri. The plaintiff Cyrus See, Jr., 32 years of age, resident of Kansas City, Missouri, and employed as a foreman by Benson Manufacturing Company, was driving his Mercury automobile from Richmond, Missouri, to his home in Kansas City. His wife was sitting in the front seat and his 14 year old daughter in the back seat. When they left Richmond the weather was cloudy but there was no precipitation. As they neared Excelsior Springs, snow began to fall. This snowfall increased in intensity as they reached the vicinity of the Flamingo Motel on Highway 69 near Kansas City. The highway at this place runs generally north and south and has two lanes of pavement each way with shoulders and a median strip in the center. At the time of the accident snow had accumulated and the highway was slippery. Plaintiff said he had been driving about 25 miles per hour, but had slowed somewhat; that his brakes and windshield wipers were functioning properly and he had his lights on. Plaintiff testified that as he reached a point near the Flamingo Motel he noticed "three or four people out flagging". He saw them "about 300 feet away". He slowed down, saw "cars stalled across the highway" and pulled left off the pavement and stopped. They sat there—talked a little and he was about to get out when his daughter shouted: "Oh, daddy, we're going to get hit". He glanced in his mirror and saw headlights approaching from the rear and "something hit me". It was his testimony that his car was struck on the right rear by the green Chevrolet driven by the defendant Kelly. Plaintiff said the blow drove his car onto the highway, headed southeast, and that "around a minute or something like that later", it was struck on the left rear quarter panel by a 1958 blue Chevrolet driven by the original codefendant William Audsley. Mrs. See and the daughter Judy gave substantially similar testimony.

Plaintiff called as a witness police officer John Kerr, who had arrived on the scene at 6:15 p. m. It was then "snowing real hard and it was awfully slick". Officer Kerr said he was told by defendant Kelly

that Audsley's car hit Kelly's car and then Kelly's car hit plaintiff's vehicle. He also stated that Audsley told him the same thing. At the trial Audsley testified that he hit the plaintiff's car, but did not strike Kelly's, and denied that he had told Officer Kerr that he had hit the Kelly car. It was defendant Kelly's testimony that when he was two or three car lengths to the rear of plaintiff's Mercury, he was struck in the rear by Audsley and thereby propelled into plaintiff's automobile.

Appellant contends that plaintiff is bound by Officer Kerr's testimony and says that if Kelly was driven into See by Audsley, then there is no evidence authorizing either a finding or a submission that Kelly negligently failed to keep a lookout or that he negligently caused the collision and plaintiff's resultant injuries.

■ We note but do not rule upon the admissibility of Kerr's testimony as to (a) what defendant Kelly told him at the scene and (b) what he was there told by defendant Audsley. However, we do rule that plaintiff is not conclusively bound by such testimony and the jury might, if it chose (and it did so choose) accept the other version of what transpired; that is, that Kelly's car hit plaintiff, and that Audsley's car later also struck plaintiff's car. We agree with the following statement found in 32 C.J.S. Evidence § 1040, p. 1106:

> "Accordingly, a party calling a witness is not necessarily or absolutely bound by his testimony; he is not bound where the testimony is contradicted, either expressly or by inference, by other evidence or circumstances, as where the circumstances or the evidence of other witnesses would warrant the trier of facts in disregarding the testimony or drawing a contrary inference."

See also, Giambelluca v. Missouri Pacific R. Co., Mo., 320 S.W.2d 457, 474, 475.

■ We believe that the evidence of plaintiff, his wife and his daughter and Mr. Audsley is amply sufficient to support a finding that Kelly's car struck plaintiff's car without having first been struck in the rear by Audsley. We hold that defendant's motion for a directed verdict was properly denied.

■ Appellant says there is no evidence that Kelly failed to keep a lookout, and therefore it was error to submit by Instruction #1 defendant's alleged "failure to keep a constant and careful lookout". Kelly says that he was watching and that he saw plaintiff's car. Kelly's trial defense seems to have been that he struck plaintiff because he was first hit by defendant Audsley. The jury refused to accept this version. Plaintiff testified that he saw the flagman and the cars involved in the other accident about 300 feet away. Whether or not a driver is actually alert and looking is usually not susceptible of ready affirmative proof but in a proper case it may be inferred from the attending surroundings and circumstances. We believe the law was correctly declared in Rohmann v. City of Richmond Heights, et al., Mo.App., 135 S.W.2d 378, 383:

> "It is the duty of a motorist to keep a lookout on the highway in the direction the car is going. He is not only required to look but to look in such an observant manner as to enable him to see the conditions which a person in the exercise of due care and caution for his own safety and the safety of others would have seen under like or similar circumstances, and it is as much negligence to fail to see that which can be observed by due care as it is negligence not to look at all. Kaley v. Huntley, 333 Mo. 771, 63 S.W.2d 21. Not to see what is plainly visible when there is a duty to look constitutes negligence. Alexander v. St. Louis-San Francisco R. Co., 327 Mo. 1012, 38 S.W.2d 1023; Woods v. Moore, Mo.App., 48 S.W.2d 202."

■■ Plaintiff was entitled in his instruction to hypothesize his own version of the evidence and his theory of defendant's

liability providing it was actually based on the evidence and presented a sound theory as to liability. We rule the instruction to be good, sufficient and proper under the evidence. We have examined the cases submitted by appellant on this point and we are not persuaded differently. In Levin v. Caldwell et al., Mo., 285 S.W.2d 655, cited by appellant, which involved a lookout instruction in an intersection collision case, *all the evidence* showed that because of shrubbery at the corner, a side approaching car could not have been seen until it was within five feet of the intersection. Hence it was held that there was no substantial evidence from which a jury could reasonably find the car could have been seen earlier and therefore failure to look could not have caused the accident. In our case defendant could see 300 feet. The cases are not alike.

■ The third and fourth assignments are first, the verdict is excessive and second, it was error to give Instruction No. 3 because there was no causal connection between plaintiff's injuries and defendant's negligence and no evidence that plaintiff suffered any permanent injuries. Instruction No. 3 is set out:

"The Court instructs the jury that if you find the issues for the plaintiff and against one or both of the defendants on the evidence and under the instructions herein, then you should, in determining his damages, take into consideration the mental and physical pain and suffering endured by him since said injuries and in consequence thereof, if any, and whether they are temporary or permanent, and find for him in such sum as in your judgment under all the facts and circumstances in evidence will be a fair and reasonable compensation to him for whatever injuries and disabilities he has sustained, if any, as a direct result of the negligence of the defendants".

Plaintiff, soon after the accident, drove his car into North Kansas City and then went to Memorial Hospital, where his wife and daughter had previously been taken by ambulance and he there saw Dr. Paul Revare, who gave him a sedative. He then went home, but said he "had a burning" from his shoulders up. The next day there was soreness in his back and neck—also a headache and a pain in his eye. He went back to Dr. Revare that morning, was x-rayed and given some tablets. He was also placed on a table with a weight, stretching his neck and vertebrae for 20 or 30 minutes. Mr. See returned to his work but took heat treatments thereafter. On the following Monday morning he left his work and again saw Dr. Revare. He still had pains in his neck, arm and eye. He received more therapy, traction and heat. He continued the traction treatments intermittently for about a year—two or three times a week part of the time and sometimes about once a month. In December, 1958, Dr. Revare sent plaintiff to Dr. Revis Lewis, who put him in a collar for 9 to 12 weeks. Plaintiff said he still had the pain at the time of trial.

Dr. Paul Revare, M.D., North Kansas City, testified. He said he saw plaintiff on the evening of November 27, 1958, and found a sprain of the neck which was difficult to evaluate as to severity, plus soreness of the neck, shoulders and an area at the base of the skull. The next day the neck was x-rayed. He saw the patient 8 times during December and continued therapy, traction and heat treatments. On December 17, Dr. Revare referred plaintiff to Dr. Lewis because the pain—particularly in the eye continued. Dr. Revare saw plaintiff 8 or 9 times a month through the winter of 1958–1959. During the following summer he saw him about 3 or 4 times each month and the pain continued with some limitation of motion. In February, 1960, his eye and right arm were his major complaints. The sharp and burning pain in his eye seemed to be relieved by a few minutes of traction. On the occasion of his last examination in February, 1960, Dr. Revare diagnosed the condition as cervical sprain

which "is semi-permanent, at least". The x-rays taken were read as normal by all the doctors.

Dr. Revis C. Lewis, mentioned above, a neurosurgeon, also testified. He first examined plaintiff on January 30, 1956 (2 years and 10 months before the accident). Plaintiff was at that time complaining of pain and stiffness in his neck. Physical therapy was prescribed and carried out. His diagnosis was "Occipital Cervical Syndrome largely on a postural basis with some arthritic changes". There was no history of injury at that time. Dr. Lewis saw plaintiff again in December, 1958, at the request of Dr. Revare. At that time he found "almost a hump back", faulty posture, thoracic kyphosis, and limitation of neck motion. It was his conclusion the patient "had incurred a soft tissue injury of the neck which was superimposed on some pre-existing arthritic and postural changes". He was given a similar examination in February, 1959, with substantially the same findings except neck muscle spasms were present. Plaintiff was fitted with a collar, which he wore. An examination on April 3, 1959, showed no appreciable change. After seeing him in May, 1959, he was released to Dr. Revare, Dr. Lewis feeling "his condition would remain about the same". Dr. Lewis saw plaintiff last on February 11, 1961, found his condition about the same except there was more numbness in the right neck which indicated nerve root irritation. Dr. Lewis expressed the opinion plaintiff would permanently continue to have these symptoms but "perhaps somewhat to a better degree". We rule against appellant's assignment of error in the giving of Instruction No. 3.

■ We are not impressed by appellant's suggestion that there is no proof that plaintiff's injuries, even if actually sustained, were incurred in the first collision with the Kelly car, rather than as a result of the second collision with the Audsley car. If plaintiff had not been first hit by Kelly and pushed onto the pavement, he would not have been in the path of the second car.

There was substantial evidence that plaintiff was injured. He so testified. He promptly sought medical attention and continued with it for a long period. The medical testimony shows at least an aggravation of a pre-existing weakened spine and neck condition. The doctors described the condition as permanent or at least semi-permanent.

■ As the courts have many times said but using different phraseology, there is no exact measuring stick by which the proper or maximum award which the evidence in a case will support, can be determined. Each case must stand on its own facts. The current purchasing power of the dollar must not be overlooked. The jury and the trial court are in a better position to measure the reasonableness of the award than is the appellate court, where it should not be reduced unless as a matter of law, the amount is more than the evidence will support. Burr v. Kansas City Public Service Co. et al., 365 Mo. 115, 276 S.W.2d 120; Honeycutt v. Wabash R. Co., Mo., 337 S.W.2d 50; Pope v. St. Louis Public Service Co., Mo., 341 S.W.2d 123.

■ The plaintiff here is a comparatively young man. He received injuries which have long been painful and will likely continue to be so. There is a limitation of neck and arm motion and a nerve root irritation. We are unwilling to hold as a matter of law that the verdict for $7500 is excessive.

We find no reversible error and the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion by MAUGHMER, C., is adopted as the opinion of the Court.

All concur.