**Mildred SCHILLING, Plaintiff-Respondent,**

**v.**

**BI–STATE DEVELOPMENT AGENCY,**
**a Corporation, Defendant-Appellant.**

**No. 32433.**

St. Louis Court of Appeals.

Missouri.

April 18, 1967.

Gerald D. Morris, St. Louis, for defendant-appellant.

Hullverson, Richardson & Hullverson, Orville Richardson, Thomas J. Motherway, St. Louis, for plaintiff-respondent.

THEODORE McMILLIAN, Special Judge.

This is an action for the recovery of damages for personal injuries sustained by the plaintiff, a pedestrian, when she was struck while attempting to cross an intersection by one of defendant's motor buses. Plaintiff's major complaint was a fractured right hip. Damages are not contested; therefore, our inquiry will be limited to the issues of liability. A jury verdict was returned in the sum of $10,500; thereafter, defendant's motion for judgment in accordance with its motion for a directed verdict; or, in the alternative, for a new trial was denied. Defendant appealed. The parties will be referred to as they were in the trial court.

Defendant complains of errors for the following reasons: (A) no substantial evi-

dence to support a finding that its bus driver failed to keep a careful lookout, or (B) that he violated the traffic signal; (C) that plaintiff was contributorily negligent as a matter of law, thus precluding any primary negligence submission; (D) no evidence of causation between failure to keep a lookout and the casualty; and finally, (E) there was no substantial evidence that at the moment defendant's operator knew, or could have known of plaintiff's position of immediate danger, defendant's operator still had enough time, in the exercise of the highest degree of care, to have avoided injury to the plaintiff by either stopping or slackening the speed of the bus. Needless to say, each contention requires a review of the evidence.

In reviewing the evidence, we shall adopt, as we must, that evidence, including any produced by defendant, most favorable to plaintiff. Also, we invoke all reasonable inferences supporting her case; this under familiar rules of appellate review. Loyd v. Moore, Mo.App., 390 S.W.2d 951, 954(1). Moreover, we recognize the rule that facts essential to recovery may be proved by circumstantial evidence and inferences drawn therefrom. Hartz v. Heimos, Mo., 352 S.W.2d 596, 601(3).

For our purposes, as did the parties, we shall assume that the two streets, Gravois and Bates, intersect at right angles, and that Gravois is a north-south street, while Bates is an east-west one. This intersection was controlled by electric traffic signals; one, on the southwest corner facing southbound traffic; the other, on the northeast corner facing eastbound Bates' Street traffic, as well as for pedestrians crossing Gravois from the west to the east. The evidence showed, on the day in question, that for southbound vehicular traffic on Gravois, there was a broad, painted, white-stop line, approximately 35.5 feet from the north curbline of Bates. The evidence was somewhat conflicting as to whether or not, on the day in question, there were painted crosswalks. Evidence also established that

the traffic signal for southbound travel was green for 59 seconds, amber for 3 seconds, and red for 38 seconds. Other evidence showed that from the center line of Gravois, separating north and southbound traffic, the next line to the west (broken line marking a lane) was 9.8 feet, and from that lane line to the west curbline of Gravois was 19 feet. Also, northbound Gravois bends to the west less than a block north of Bates.

On August 9, 1963, plaintiff, Miss Mildred Schilling, age 51, was walking southwardly on the west side of Gravois, approaching the north curbline of Bates. It was her intention to continue south across Bates, but as she reached the corner, the light on the southwest corner of Bates and Gravois turned from green to amber. She paused momentarily, looked to the east, and saw that the light on the northeast corner of the intersection was green. She then looked to her left (north), saw nothing close to the intersection, and then stepped down from the curb to cross Gravois. She said, "Traffic * * * seemed in order. * * * It seemed all right to go. * * * I didn't see anything, why I shouldn't cross the street." As she reached the second lane, plaintiff turned her head to the right (south) to look for eastbound traffic on Bates which might turn left to go north on Gravois. According to plaintiff, she was walking normally, and had taken 6 or 7 steps from the curb, and had reached the second lane when the next thing she remembered was that she was lying in the street. She neither saw nor heard the bus before she was struck. However, thereafter, she remembered lying several feet in front of the bus and saw a man step down from it.

In this posture of the case, plaintiff, for limited purposes, called defendant's operator as a witness. He testified, on the day in question, that he was the driver of the bus that had hit plaintiff. Defendant's counsel, then by cross-examination, developed the following: that the streets were still somewhat wet from an earlier rain;

that he was driving 3 or 4 feet from the curb in the curb lane; that when he was 100 feet back from Bates, his speed was 20 miles per hour; that when he was 50 feet back, the light changed to amber; that when he applied the brakes, he removed his foot from the gas to the brake; that the bus skidded; that he saw plaintiff while she was standing on the curb; that when the light facing him went to amber, plaintiff stepped from the curb and began to cross Gravois; that when plaintiff stepped from the curb, the bus was 25 to 30 feet from her; that the bus speed when plaintiff stepped from the curb was 8 to 9 miles per hour, and it was sliding; that he tried to steer the bus away from her (to his left); that skid marks were from 35 to 40 feet long; that the bus was 40–45 feet long and about 8 feet wide; that plaintiff was struck by the right front corner of the bus as it was swerving (3 or 4 feet) and was still skidding; that when the bus stopped, the right corner was about 8 feet out from the right hand (west) curb and so was plaintiff; and that at contact, the bus was moving not over 3 miles per hour, and it did not move after contact.

On redirect, plaintiff developed that the intersection was level; that the back end of the bus stopped near a heavy, white line where the bus driver knew the front end of the bus should have stopped for the red light; that when plaintiff stepped from the curb, he didn't see her look toward the bus; and that the bus at no time went into Bates.

Plaintiff also put into evidence two ordinances of the City of St. Louis: Ordinance No. 47360 which established electric signals for the Gravois and Bates intersection, and Ordinance No. 46687, Section 40, which provides that drivers and pedestrians facing green lights may proceed; and that drivers and pedestrians facing red lights shall stop. Further, it allowed pedestrians to proceed across in the crosswalk when facing a green light; and, also, required drivers, upon the display of an amber signal, to take heed that a red

signal would be promptly exhibited thereafter, and such driver shall not thereafter enter the intersection. All persons were required to obey all official traffic control signals.

In support of Point (A); i. e., there was no substantial evidence adduced to support a finding that defendant's operator failed to keep a lookout, defendant argues that since plaintiff only knows she was walking across the street, and had taken 6 or 7 steps, and remembers no more, of necessity, plaintiff must rely upon her only other factual witness, defendant's operator. This being the case, defendant contends that since the operator said he kept a careful lookout; i. e., saw the light change, saw plaintiff step from the curb, and observed her up to the moment of impact, and since there is no evidence to the contrary, plaintiff is thereby precluded from a recovery on the lookout theory. Moreover, defendant further argues, assuming the above hypothesis to be valid, that thereafter he could not have avoided the casualty; and, therefore, any failure to see plaintiff was not an efficient cause of the accident. Citing in support therefor, Chandler v. Mueller, Mo., 377 S.W.2d 288; Levin v. Caldwell, Mo., 285 S.W.2d 655(3); and Zalle v. Underwood, Mo., 372 S.W.2d 98. None would appear to be apropos. In Chandler, the defendant appellant had no direct proof of Chandler's failure to maintain a lookout, and was forced to rely upon Chandler's testimony that Chandler was not keeping a lookout. In Levin, plaintiff sued both drivers in a two-car collision and called both as his witnesses without reservation. He was thus held to be bound by testimony offered by him since he had no other evidence, direct or circumstantial, that defendant whom he charged with failure to keep a lookout could have seen the other automobile sooner than he did. In Zalle, both drivers in a two-car collision were oblivious to one another's approach, and there was no evidence of their respective positions sufficient for the jury to deter-

mine whether any failure to keep a lookout caused the collision.

■ The fallacy of defendant's argument is that defendant assumes that their operator became plaintiff's witness with respect to all his testimony. Here, plaintiff, not knowing herself what had struck her, and the fact of which was denied by defendant, was forced to call the bus driver to prove an essential element of her case; namely, that defendant's bus struck her. So, plaintiff, pursuant to RSMo 1959, Section 491.030, V.A.M.S., called defendant's operator to testify in her case. We rule, from the evidence presented, that plaintiff is only bound by that part of the operator's testimony which she offered and thus vouched for as true. As a corollary, what defendant's operator may have said upon cross-examination by defendant's own counsel and thus presumably in its own behalf, is in no way binding upon the plaintiff. Lolordo v. Lacy, 337 Mo. 1097, 88 S.W.2d 353, 355(3–7). Moreover, the fact that the adverse witness was not a party defendant does not restrict application of the rule. Neuhoff Bros. Packers v. Kansas City Dressed Beef Co., Mo.App., 340 S.W.2d 193, 196(2); Sheerin v. St. Louis Public Service Co., Mo., 300 S.W.2d 483, 486(4); see also Shepard v. Harris, Mo., 329 S.W.2d 1(1). (Cross-examination or redirect in response thereto; general credibility of adverse party not vouched for by plaintiff.) Therefore, if we treat, as we must, the bus driver's testimony concerning his lookout and efforts to avoid the casualty as defendant's evidence, the question remains: Was there any substantial evidence in the whole case from which it could be reasonably inferred that the bus driver did not keep a careful lookout? If so, then his avowals to the contrary would be unavailing, (Hartz v. Heimos, Mo., 352 S.W.2d 596, 602(4)) provided, plaintiff was not guilty of contributory negligence.

■ The bus driver was under a continuing duty to exercise the highest degree of care at all times and at all places, to observe not only persons on or approaching the street on which he was traveling, but also all related conditions ahead and laterally which might reasonably affect his own safety and that of others. See v. Kelly, Mo.App., 363 S.W.2d 213, 216(5), citing Rohmann v. City of Richmond Heights, Mo.App., 135 S.W.2d 378, 383 (duty to notice holes in the street); Schmidt v. Windish, Mo., 304 S.W.2d 891, 893 (driver required to be aware of what could be known by observation or conscious recognition). Disregarding for the moment, plaintiff's exhortation that we take judicial notice that the normal walking step of a person is about 2.5 feet, a jury could still find that plaintiff was 8 feet from the curb at the moment of impact. Taking in consideration that the normal walking speed of a person is 2 to 3 miles per hour, or 2.9 to 4.4 feet per second, plaintiff would have consumed 2.7 seconds in walking 8 feet. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 635 (9). Therefore, since the bus was being driven at a speed of 20 miles an hour or 30 feet per second until it reached a point 50 feet north of Bates, and since plaintiff did not leave the curb until the light was green in her favor, a jury could have found that the bus was 5.7 seconds, or 121 feet away from the point of impact when the light for southbound traffic first turned amber. The 121 feet distance is the sum of 50 feet of travel in stopping (consuming 3 seconds) and 71 feet of travel at 20 miles an hour (2.7 seconds). The manner of 50 foot of travel in stopping is: The driver testified that the bus was moving 20 miles an hour until it was 50 feet from Bates. So, a jury could find that at that speed, the bus was stopped in 50 feet under the existing circumstances and that the bus did not move after impact. The best evidence, of course, of the distance in which a bus could be stopped is the distance in which it was. Loyd v. Moore, Mo.App., 390 S.W.2d 951, 957(9). On the other hand, we also judicially know that the

reaction time of the bus driver, absent other evidence, is ¾ of a second. Koogler v. Mound City Cab Co., Mo., 349 S.W.2d 233. Hence, the bus traveled the first 22.5 feet of its total 50 foot stopping distance in ¾ of a second. Its speed thereafter diminished at an average of 10 miles an hour, so that it covered the last 27.5 feet of its total 50 foot stopping distance in about 2 seconds. Therefore, it covered the entire 50 foot distance in less than 3 seconds. For these reasons, we conclude that a jury could have found that the bus driver should have noticed the electric signal at Bates, which he said he did, when he was 121 feet away, and should have then taken action to control the movement of his bus so as to stop it at the broad, white-painted, traffic stop line about 35 feet from Bates, where he knew he was required to stop. In this regard, he negligently failed to keep a careful lookout; therefore, it was not error on the part of the learned trial court to submit the case to the jury on the theory of lookout. See v. Kelly, supra, holding that plaintiff was not contributorily negligent as a matter of law. Murphy v. S. S. Kresge Co., Mo.App., 239 S.W.2d 573; Politte v. Miller, Mo.App., 301 S.W.2d 839. The Murphy case merely cites the well-known principle that a person is required to make ordinary use of his faculties to observe and avoid danger. Also, the Politte case, with which we concur, states that a green light does not permit one whom it favors to proceed with shut eyes and ears across an intersection. Here, plaintiff told us that she looked, and a jury could find that she did; but, as she said, " * * * saw no reason not to go ahead" still the jury could have found the bus had not yet come to the bend, which was less than a block north of Bates. More appropriate would seem to be Wofford v. St. Louis Public Service Co., Mo., 252 S.W.2d 529, 531(4). In the Wofford case, plaintiff looked, could see for 75 feet, saw nothing coming, walked 10 feet and was hit by a bus which could have been stopped in less than that distance. Also, in Miller v. St. Louis Public Service Co., Mo.,

389 S.W.2d 769, 771(3–5), plaintiff looked, saw no traffic near, walked 22 feet without looking again and was hit. Obviously, since we have found that defendant should have been put on notice when the green light turned to amber (121 feet away), and he saw plaintiff step from the curb, and that plaintiff was crossing at the corner (in a marked or unmarked crosswalk) with a green light in her favor, apart from any right on plaintiff's part to assume (absent evidence to the contrary) that the driver approaching a red light would exercise some care to bring his vehicle under control, we hold that contributory negligence was, to say the least, a jury question.

As to the City of St. Louis Ordinances heretofore mentioned, defendant contends that since the bus stopped for the red light short of the imaginary eastward extension of the north curbline of Bates, it did not violate the traffic signal. In short, in that no part of the bus was stopped in an areaway which was common to both Bates and Gravois, the intersection was not entered; hence, no violation. Defendant relies upon Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, wherein it was held that the area of an intersection embraces the paved space common to both roadways. As such, we have no quarrel with that definition; yet, it seems inappropriate to our immediate problem; i. e., the status of a crosswalk. If defendant is correct, indeed, we have an anomalous situation wherein a pedestrian is allowed to enter into a crosswalk, or cross at a corner, on the green light while, at the same time, a motorist facing a red light could enter the same crosswalk and run down the unsuspecting pedestrian with impunity! Unquestionably, the mandate of the ordinance is primarily directed to the obedience by both motorists and pedestrians to the traffic signal. Instruction No. 2 is a submission of Multiple Negligent Acts in the form of MAI 17.02, which required the jury to find that defendant violated the traffic signal. Defendant concludes, as seen from his arguments, that

the only way it could have been violated was for some portion of the bus to have gone into the intersection. However, we cannot conclude, to the detriment of pedestrians or others lawfully within the intersection, and in compliance therewith, that this is the only way in which the traffic signal could be violated. We may well assume, without deciding, that this type of submission is only a general submission and gives the jury no guidance as to the issues involved, but invites them to speculate as to what acts or conduct would constitute negligence pursuant thereto. Hawkeye-Security Ins. Co. v. Thomas Grain Fumigant Co., Mo.App., 407 S.W.2d 622, 629(7–10), where the Court had under discussion " ' * * * disregard electric warning signal * * *.' " However, this was not the criticism leveled in the case at bar; and, moreover, in making the submission given, plaintiff was in full compliance with Civil Rule 70.01(b) V.A.M.R. So, too, this charge of error must be denied as unfounded. The ordinance requires vehicles to stop when a red light is displayed, and this can only mean that the motorist is required to stop somewhat short of the areaway at the corner while a pedestrian is attempting to cross on a green light so as to permit one to pass without an unreasonable risk of harm.

Finally, defendant urges error in regard to the humanitarian submission. In support of this charge, defendant citing Findley v. Asher, Mo., 334 S.W.2d 70, states there is no substantial evidence that defendant had time to avoid injury to plaintiff by either stopping or slackening the speed of the bus after the time plaintiff came into a position of immediate danger. Defendant also states that by her testimony plaintiff does not show how far in feet she walked from the curb, nor how long she took to walk the unknown distance. Therefore, her case in this regard rests on sheer conjecture and speculation.

■ Plaintiff meets defendant's above contentions by urging that a jury could have found that she walked normally from the curb; and that we, the court will take judicial notice, and so we will, that a normal walking speed is 2 to 3 miles per hour. De Lay v. Ward, supra. Therefore it is argued that the jury could have found that this 51 year-old woman walked into the street at a speed of 2 miles per hour, or 2.9 feet per second. Also, a jury could find that plaintiff was struck after she had taken 6 or 7 steps from the curb and had walked into the second lane. Plaintiff then states that it is a matter of common observation, or we·can take judicial notice that a normal walking step is 2.5 feet; and, therefore, she had reached a point about 15 feet from the curb. 31A C.J.S. Evidence § 102, p. 163; 94 C.J.S. Weights and Measures § 1, p. 542; Transcontinental Insurance Co. v. Stanton, C.C.A., Ill., 74 F.2d 935, 938(9) ; State v. Varner, Mo., 329 S.W.2d 623; 630 Webster's New International Dictionary, defining "pace." No case has been cited, nor has our search revealed one, wherein a Court has taken judicial notice that a normal walking step is 2.5 feet. Plaintiff refers us to State v. Varner, supra, a murder case where the victim was found in an open field, and distances were permitted to be measured, some by stepping (citing 31 C.J.S. Evidence § 102, p. 708). In the Transcontinental case, the testimony showed that a fire escape was within an easy step, instead of specifying the actual distance. The court held, " * * * It is of common knowledge that distances are frequently measured by pacing or stepping and assuming a pace or step to be three feet. * * * This has been customary from time out of memory." Webster's New International Dictionary merely defined pace in terms of step; a unit of measurement for distances—3 feet. We have no quarrel that a step or pace is or can be a unit of measurement for distances; nor do we quarrel with the fact that where one intentionally and deliberately acts to measure an unknown distance by the use of uniform steps that the results are reasonably accurate using as a unit 2.5–3 feet a step. However, when we talk of a normal walking step, we are

concerned with not a constant, deliberate act but a highly variable act of individual human beings. It is true that the doctrine of judicial notice is not a hard and fast one but is one which must be tempered by judicial discretion, the Court not being bound to take judicial notice of matters of fact; and whether they will do so or not being dependent on the nature of the subject, the issue involved and the justice of the case. City of St. Louis v. Niehaus, 236 Mo. 8, 139 S.W. 450. Judge Swayne in speaking of judicial cognizance in Brown et al., v. Piper, 91 U.S. 37, l.c. 42, 43, 23 L.Ed. 200 said: " * * * This power is to be exercised by courts with caution. Care must be taken that the requisite notoriety exists. Every reasonable doubt upon the subject should be resolved promptly in the negative." To this, we might well add that where doubt does exist, and no injustice is apparent, the parties should be put upon their proof. Here, we have many doubts; namely, sex, height, age, health, leg length, motivation, etc. Also, no reason has been offered as to any apparent injustice or undue hardship, if notice is not taken. Therefore, we hold that to take notice that a normal walking step is about 2.5 feet is not of sufficient notoriety to be tenable. Accordingly, the plaintiff is put upon her proof.

▆▆ Therefore, since we do not take judicial notice as requested by plaintiff, then plaintiff's humanitarian submission must fail unless we can, by substantial evidence, locate the bus at the time plaintiff came into a position of immediate danger. Plaintiff's testimony concerning being in the second lane is so vague as to be meaningless. Also, it is likewise impossible to tell how far that lane was from the curb. So, the only other evidence as to how far plaintiff was from the curb was the operator's testimony of 8 feet. Under the discussion pertaining to lookout, we have already demonstrated that the jury could find that the bus was 5.7 seconds, or 121 feet away when the light for southbound traffic first turned amber. So also, by similar mathematics the jury could find, when plaintiff came into a position of immediate danger, that the bus was 31 feet, or 2.7 seconds away from the point of impact when plaintiff stepped from the curb. We arrive at 31 feet by subtracting 90 feet of travel (3 second-light from amber to green) from 121 feet. This being the case, we hold that since it took 50 feet to bring the bus to a stop; defendant did not have the means available, by using the highest degree of care, to avoid injuring plaintiff, by stopping his bus, after plaintiff came into a position of immediate danger. Therefore, plaintiff made no submissible case on failure to stop.

We note that plaintiff's verdict-directing instruction on humanitarian negligence, unlike the one evasive act (slackening and swerving) submitted in Frandeka v. St. Louis Public Service Co., 234 S.W.2d 540, 549(17), submitted disjunctively either stopping the bus or slackening its speed so as to avoid the accident. We also find from the evidence that plaintiff was struck by the right front corner of the bus; therefore, in order to have avoided the accident, the operator would have had to slacken his speed sufficiently to allow plaintiff time enough to completely cross the path of the bus, which is 8 feet wide, or 2.7 seconds. Therefore, since a jury could have found that plaintiff came into a position of immediate danger as soon as she stepped from the curb, and since plaintiff was then 2.7 seconds away from the point of impact, and at least 3 seconds (50 foot of travel for stopping time) required to stop, we find that a submissible humanitarian case on failure to stop was not made. Also, we find that since the bus was 8 feet wide and that the whole front of the bus would have to be cleared, there was no slackening of speed case made under the "almost escaping rule," Findley v. Asher, Mo., 334 S.W.2d 70. Therefore, we hold that plaintiff's evidence failed to support either humanitarian submission, and that in so instructing the jury, the Court committed prejudicial error.

For the reasons stated herein, the judgment is reversed and the cause remanded and a new trial granted on all issues per-

taining to liability only; and it is our further order that the portion of the verdict pertaining to damages in the sum of $10,500 be and is hereby held in abeyance and if on retrial, the issue of liability be found in favor of plaintiff and against the defendant, judgment should be entered for plaintiff in the sum of $10,500. If on retrial the issues pertaining to liability are found for defendant, judgment should be entered for defendant.

ANDERSON, P. J., and WOLFE, J., concur.