Loretta **ANDERSON** et al., Plaintiffs-Respondents,

v.

Gerald Francis **KNOBBE**, Defendant-Appellant.

No. 57518.

Supreme Court of Missouri, Division No. 1.

Jan. 14, 1974.

**100**

Dale L. Rollings, Henry Gerhardt, Bruere & Rollings, St. Charles, for respondents.

Rollin J. Moerschel, Niedner, Moerschel, Nack & Ahlheim, Andrew H. McColloch, Wentker & McColloch, St. Charles, for appellant.

WELBORN, Commissioner.

Action for damages for wrongful death. Jury returned verdict for defendant. Trial court sustained plaintiffs' motion for new trial. Defendant appeals from order granting new trial.

Shortly after 6:00 P.M. on December 24, 1970, Gerald Knobbe was driving south on Route 94 in St. Charles County, approaching the village of Boschertown. Route 94 is a 20′ paved highway in that area. The night was clear and dark. There is a clear line of sight on the highway through Boschertown for at least ¼ mile in the direction toward which Knobbe was driving.

Boschertown consists of a few houses, a tavern and tin shop on the west side of Route 94 and a boat house on the east side. These buildings were from 24 to 30 feet from the highway. The businesses were closed at the time here involved. The only artificial light in the area was given off by a dawn-to-dusk light on a telephone pole, over a telephone booth on the east side of the road, 20′ from the pavement.

Knobbe was driving 40 to 45 miles per hour. There was no other traffic in the vicinity. He had his headlights on low beam. When he was nearly opposite the telephone booth and light, he suddenly saw an "image * * * and bam." Arthur J. Anderson was struck by Knobbe's auto. The point of collision on the vehicle was the right half of the front of the auto. The highway patrolman who arrived at the scene at 6:27 observed no signs of life in Anderson.

Knobbe was the only eyewitness to the accident who testified. He stated that he was unable to tell whether Anderson was moving when the auto struck him or the direction in which he was facing. The in-

jury to Anderson was largely on the right side of his body. A half-pint of whiskey in his left pocket was unbroken.

Anderson had been in the Boschertown tavern earlier in the evening. He left when it closed at around 6:00 P.M. A witness for the defendant at the trial testified that he left the tavern at the same time and offered to take Anderson home. Anderson declined the offer and entered his pickup truck, parked on the tavern parking lot, facing the building. The investigating highway patrolman found the pickup on the parking lot, facing in the opposite direction, with its lights on and motor running. The truck was some 150' from the point of impact and 20 to 30 feet from the west edge of the pavement.

In this action by Anderson's widow and children for his wrongful death, the case was submitted on defendant's primary negligence in failing to keep a careful lookout. Plaintiffs' contributory negligence on the same basis was submitted to the jury. The trial court refused plaintiffs' offered humanitarian instruction and an instruction which would have submitted alternatively failure to keep a careful lookout or to act after danger of collision apparent (MAI No. 17.04).

The jury's verdict was for the defendant.

Plaintiffs' motion for new trial asserted error, among others, in failing to give their refused instructions. Also asserted as error and as grounds for new trial was the trial court's failure, upon request of plaintiffs' counsel, to take judicial notice of the walking speed of an average man and to advise the jury of that fact.

When the request was made to the trial court on this matter, defense counsel objected on the grounds of lack of evidence that Anderson was walking just prior to the collision. The trial court refused plaintiffs' request. When the motion for new trial was considered, the court concluded that there was evidence from which the jury could have inferred that Anderson was walking and the court granted a new trial on that ground.

■ In numerous cases, it has been held that when the movement of a person shown to have been walking is a subject of a pertinent calculation, a court will judicially notice that average adult walking speed is from 2.9 to 4.4 feet per second or two to three miles per hour. Immekus v. Quigg, 406 S.W.2d 298, 300–301[2, 3] (Mo.App.1966); Schilling v. Bi-State Development Agency, 414 S.W.2d 818, 825[13, 17] (Mo.App.1967); McFarland v. Wildhaber, 334 S.W.2d 1, 3[2–7] (Mo.1960). In those cases, there was evidence that at the time in question the person involved was walking. Here the trial court originally refused plaintiffs' request because of the absence of such evidence, but on the motion for new trial, the court concluded that, viewing the evidence most favorably to plaintiffs, the jury could have inferred that Anderson was walking immediately before he was struck by respondent's auto.

The appellant, the only person who saw Anderson at the time of the accident, could not say what he was doing. Knobbe's view was so fleeting that he could not say whether Anderson was walking. The trial court reasons that because Anderson was between his parked truck and the telephone booth, the jury could infer that he was in fact walking when he was struck and immediately prior to that time. It was reasonably certain that Anderson had gone from his truck to the accident scene by foot. In the absence of a demonstrated emergency, it might be presumed that he walked, not ran. Here, however, accepting plaintiffs' hypothesis that Anderson was proceeding westwardly across the highway, away from the telephone booth when he was struck, to conclude that Anderson was walking, the jury would have to find that he stepped into the path of an oncoming automobile on a relatively open highway with no other traffic at a time when the auto was very near. It is just as reasonable to assume that a person attempting to

cross the highway in such circumstances would have been running, not walking. The sudden appearance of Anderson at the right of the center of Knobbe's auto would tend to support such conclusion.

Only by guess and speculation, not by any logical reasoning, may it be concluded that Anderson was walking when he was struck. In such situation, the trial court properly declined to take judicial knowledge of walking speed. In fact for it to have done so would have amounted to the court's indicating that it felt that Anderson was walking across the road when he was struck.

■ In sustaining plaintiffs' motion for new trial, the trial court did not connect his ruling with the further complaint of plaintiffs of error in failing to give plaintiffs' humanitarian submission. Respondents now argue that had the trial court taken judicial notice of walking speed, the fact so noticed would have a bearing on the submission of the case under the humanitarian doctrine. Again, the argument on this theory is premised upon the basis that Anderson was walking and the direction in which he was walking. Using such assumption and applying the accepted walking speed, respondents would reason backward from the point of collision to determine, for example, when Anderson came into a position of peril. Any such reasoning, as above demonstrated, is necessarily based upon speculation. Essential elements of a humanitarian case cannot rest upon such a basis. Elam v. Albee, 432 S.W.2d 379 (Mo.App.1968); Hastings v. Coppage, 411 S.W.2d 232, 237[9, 10] (Mo.1967).

Respondents finally contend that the order granting a new trial should be sustained as a proper exercise of discretion by the trial court.

"* * * A trial court may exercise its discretion in determining the prejudicial effect resulting from erroneously admitting or excluding evidence. But this discretion exists only if the trial court erred in the admission or exclusion of the particular

evidence. That is to say, if there was no error committed in excluding or admitting proffered evidence, the trial court had no discretion to grant a new trial. * * *" Gray v. St. Louis-San Francisco Ry. Co., 363 Mo. 864, 254 S.W.2d 577, 580[3, 4] (1952). See also Pitha v. St. Louis Public Service Company, 273 S.W.2d 176, 179–180[1–4] (Mo.1954).

As previously demonstrated, there was no error in the denial of plaintiffs' request for the taking of judicial notice, and therefore there was no discretion to grant a new trial on such grounds.

Order granting new trial reversed and cause remanded with directions to reinstate verdict and enter judgment therein.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.