**Nellie G. BRUMMET et al., Appellants,**

**v.**

**Robert Eugene PARKER and Morrison Motor Freight, Inc., Respondents.**

**No. 56854.**

Supreme Court of Missouri,
Division No. 2.

April 8, 1974.

Motion for Rehearing or to Transfer to Court en Banc for Modification of Court's Opinion Denied May 13, 1974.

J. Turner Jones, Columbia, for appellants; Jones Knight & Ford, Columbia, of counsel.

Dale Reesman, Larry E. Tate, Boonville, for respondents; Williams, Reesman & Tate, Boonville, of counsel.

STOCKARD, Commissioner.

In this suit for wrongful death, plaintiffs have appealed from the judgment for defendants entered pursuant to a directed verdict. The notice of appeal was filed prior to January 1, 1972. This court has appellate jurisdiction by reason of the amount in dispute.

Del Brummet was killed when he was walking in the eastbound lane of Interstate Highway 70 and was struck by a truck owned by Morrison Motor Freight, Inc., and operated by Robert Eugene Parker. Plaintiffs, Del Brummet's surviving widow and two minor daughters, pleaded primary negligence on the part of Parker, including the failure to keep a careful lookout and to sound a warning. They also pleaded humanitarian negligence in failing to stop, swerve, slacken speed, sound a warning, or slacken speed and sound a warning, or swerve and sound a warning.

From the evidence offered by plaintiffs a jury reasonably could have found the following facts.

Del Brummet (hereafter referred to as "decedent") was traveling eastbound on Interstate Highway 70 in his Oldsmobile automobile following a Coca-Cola truck which was being operated by Charles Barnett. He was involved in a minor collision with the truck while attempting to pass, and his automobile spun around twice and came to rest in the median between the east and westbound lanes. After the collision, Barnett stopped his truck on the right shoulder of the highway about 50 to 75 yards east of the decedent's automobile and turned on the "flasher" lights. A second Coca-Cola truck, operated by Don Douglas, had been following the Barnett truck. Douglas pulled off the highway onto the shoulder, stopped about 50 or 75 feet west of decedent's automobile and turned on the "flasher" lights. It was subsequently determined that decedent's automobile had a flat tire with a foreign object in the tire. The flat tire may have been the cause of the collision with the Barnett truck and the loss of control by decedent.

Decedent walked from his automobile across the eastbound lanes of the highway to the Douglas truck. He asked Douglas, "What happened?" Douglas replied that he did not know. Barnett then appeared at the rear of the Douglas truck and he asked decedent if he had insurance. Decedent asked why he wanted to know, and Douglas replied that decedent had hit his truck. The decedent wanted to know how much damage was done to Barnett's "car," and he stated he would pay for the damage. Barnett replied that he could not accept money, and that he would have to call the Highway Patrol. The decedent then told Barnett to go ahead and call the patrol, and he turned and walked away in the general direction of his automobile where, according to Douglas, he disappeared in the darkness.

Douglas heard a truck approaching from the west and he looked down the highway toward the east because he was concerned as to where decedent might be, but he could not see him. The truck of Morrison Motor Freight, Inc., operated by Robert Eugene Parker, then came over a rise in the highway to the West. It was in the righthand eastbound lane, and traveling about 55 miles an hour. Parker testified that when his tractor-trailer topped the rise west of the collision scene his headlights were on "dim," apparently meaning "low beam,"

and that he was traveling about 55 miles an hour. He saw a truck on the righthand shoulder ahead of him (the Douglas truck), and he took his foot off the accelerator and "hovered" it about an inch from the brake pedal and moved the truck into the left lane. When the front bumper of his truck was about even with the front bumper of the Douglas truck, he first saw the decedent who was wearing dark clothing and was 25 feet in front of his truck at the centerline of the two eastbound lanes walking northeastwardly and looking straight ahead. Parker immediately applied his brakes. He did not sound a warning and did not attempt to swerve because he could not apply the brakes and swerve too, or the truck "would definitely turn over," and he could not "have gotten the trailer out of line in time for the trailer to have missed him [decedent] because [he] was too close." At that time Parker's truck was in the left lane and traveling about 40 to 45 miles an hour. Parker testified that decedent "seemed to walk just about to the middle of the lane and then just turned and started like he was going to walk right down the middle of that lane." The truck struck decedent "about the time he turned," and he was struck "about the middle of the grill."

It was stipulated that at the time of the collision Parker's truck was equipped with "excellent" tires, brakes, steering equipment, lights and horn.

Plaintiffs arranged for a test pertaining to sight and stopping distances. At a time when the conditions of the highway and the degree of darkness were substantially the same as at the time of the collision, a dark colored automobile was placed in the median strip at the location of decedent's automobile. Another vehicle was placed on the south shoulder about 75 feet west of the automobile in the median which was the location of the Douglas truck. A man with dark clothing was positioned in the center of the righthand eastbound lane opposite the front bumper of the automobile in the median. A tractor-trailer, similar to

the Parker truck, and containing a passenger as an observer, was operated eastward to approach the collision scene at 55 miles an hour with the lights on low beam. When the taillights on the vehicle parked on the shoulder were sighted, the operator of the truck removed his foot from the accelerator, turned the truck into the left lane, and held his foot about an inch above the brake pedal. The operator continued until the person standing on the highway was seen. He then applied his brakes and came to a stop without sliding the tires three to six feet before the truck reached a point even with the person standing on the highway. The person on the highway was first seen by the observer in the truck when the truck was 261 feet away from that person.

■ We are of the opinion that plaintiffs made a submissible case on primary negligence in failing to keep a careful lookout, and also on humanitarian negligence.

■ Plaintiffs' evidence was to the effect that under the conditions then and there existing, Parker could have seen a person on the highway ahead of him approximately 260 feet away. But, Parker testified that he did not in fact see decedent until he was only 25 feet away and at the centerline of the eastbound lane. "Generally speaking the issue [of failure to keep a careful lookout] is submissible if there is evidence that the party charged with negligence could have seen the other car (or object) sooner and in time to have acted to avoid the occurrence." Welch v. Sheley, 443 S.W.2d 110, 118 (Mo.1969). See also Heberer v. Duncan, 449 S.W.2d 561 (Mo.1970). A jury would not be required to believe the testimony of Parker which inferred that since he did not see decedent until he was 25 feet away, he could not have seen him even if he had maintained a careful lookout. Also, approximately three and one-half seconds were required for the truck to travel the 260 feet immediately before the accident. Decedent was walking, and in that time he

traveled not more than twenty feet. The evidence is that decedent was walking northeastwardly. From the south edge of the pavement to the centerline would have been approximately twelve feet and approximately two seconds would have been required for decedent to cover that distance. The Parker truck would have been about 100 feet away when the deceased was at the center of the righthand lane, which was not in the path of the truck since it was then in the lefthand lane. At that time, according to plaintiffs' evidence, Parker could and should have seen decedent, and a jury reasonably could find that a warning then given would have prevented the injury.

■ Defendants argued to the trial court, and contend on this appeal, that decedent was contributorily negligent as a matter of law. In determining this question, we must necessarily bear in mind that whether decedent was contributorily negligent is a jury question unless it may be said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to plaintiffs, the only reasonable conclusion is that deceased was negligent and that his negligence was a proximate cause of his injury. Kickham v. Carter, 314 S.W.2d 902, 908 (Mo.1958). In this case, decedent had been involved in a minor collision with the Barnett truck, perhaps resulting from a flat tire. After decedent came to stop in the median, he went to the Douglas truck and asked Douglas what happened, but his previous collision had been with the Barnett truck. Under these circumstances, it was a jury question whether decedent was contributorily negligent in being on the highway at the place he was at the time of the approach of the Parker truck.

Since the judgment in this case must be reversed and the cause remanded for trial because plaintiffs made a submissible case on primary negligence, we need not go into detail on the submissibility of the pleaded humanitarian negligence. It is sufficient to refer to such cases as Yarrington v. Lininger, 327 S.W.2d 104 (Mo.1959); Davis v. Quality Oil Company, 353 S.W.2d 670 (Mo.1962); and Downing v. Dixon, 314 S.W.2d 927 (Mo.App.1958), for a discussion of the principles of the humanitarian rule.

■ The basic fact of liability under that rule is what was called a position of imminent peril and is now denominated a position of immediate danger. MAI 17.14. The position of immediate danger referred to, whether or not the injured party was negligent in getting there, is that position which by reason of the then existing circumstances, if unchanged, injury is reasonably certain. In this case the jury could find from the evidence that the decedent was oblivious to his danger, and in such circumstances "the zone of [immediate danger] is widened to that point where it was or should have been reasonably apparent to the defendant in the exercise of the required degree of care that the [injured party] was oblivious of the approach of defendant's moving vehicle and was intent on continuing across its path." Yarrington v. Lininger, supra.

We do not consider it fatal to plaintiffs' humanitarian case that no witness testified to the precise location of decedent when the Parker truck was, for example, 260 feet, or 200 feet, or 100 feet from the point of impact. Parker testified that when he first saw decedent he was at the centerline and walking northeastwardly. He necessarily had to have been on the highway in the preceding two seconds walking directly into the path of the Parker truck, and apparently oblivious to its approach. This evidence authorized the submission to the jury of plaintiffs' humanitarian case, and the trial court erred in directing a verdict for defendants.

The judgment is reversed and the cause remanded.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the court.

All of the judges concur.