Henry GOTTLIEB, Appellant,

v.

Isaac SZAJNFELD, Respondent.

No. KCD 28300.

Missouri Court of Appeals,
Kansas City District.

May 2, 1977.

Robert J. Campbell, James F. Davis, Kansas City, Brown, Koralchik, Fingersh & Sildon, Kansas City, of counsel, for appellant.

Walter R. Simpson, Kansas City, Sheridan, Sanders, Mason & Simpson, Kansas City, of counsel, for respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

SWOFFORD, Presiding Judge.

This is an action for personal injuries sustained by the appellant (plaintiff) who, as a pedestrian while crossing 89th Street, was struck by an automobile driven by the respondent (defendant). A jury trial resulted in a verdict for the defendant and, after an unavailing motion for a new trial, the plaintiff appeals, asserting as his single assignment of error the trial court's refusal of his proffered instruction submitting his cause upon the doctrine of humanitarian

negligence. No question is raised as to the sufficiency of the refused instruction as to form or content, which instruction was MAI 17.15. The plaintiff maintains that the evidence adduced entitled him to this submission while the defendant, with equal vigor, argues that the record does not establish the elements of humanitarian negligence and was properly refused, as deficient in proof of the standards and required evidence in this type of negligence action since *Banks v. Morris & Co.*, 302 Mo. 254, 257 S.W. 482, 484[1, 2] (Mo. banc 1924) and subsequent decisions.

It is admitted that the defendant's motor vehicle struck the pedestrian-plaintiff resulting in personal injuries. The issues decisive of this appeal are whether or not the record supports a submission that the plaintiff was in a position of immediate danger (imminent peril) in time thereafter for the defendant to have acted under the humanitarian doctrine to have avoided striking and injuring him.

■■■ This court, in determining these narrowly confined issues and reaching a conclusion as to whether or not the proffered instruction was properly refused is guided and controlled by certain well-established principles. Where error is claimed by reason of the refusal of an instruction by a trial court, the reviewing court must consider the evidence in the light most favorable to the party offering such instruction and give such party the benefit of any favorable inferences that may be reasonably drawn therefrom, and disregard the other party's evidence in conflict therewith. *Worley v. Tucker Nevils, Inc.*, 503 S.W.2d 417, 421[3] (Mo. banc 1973); *Middleman v. Complete Auto Transit, Inc.*, 486 S.W.2d 456, 460–461[4] (Mo. banc 1972); *Page v. Baxter*, 503 S.W.2d 32, 33[1] (Mo.App.1973); *Hood v. Heppler*, 503 S.W.2d 452, 455[4] (Mo.App.1973). An important corollary of this principle of review is that the party complaining of the refusal of an instruction may take advantage of and rely upon testimony or facts elicited from his opponent's side of the case, so long as such testimony

or facts does not contradict the appellant's evidence and is not clearly at war with his theory of the case. *Worley v. Tucker Nevils, Inc., supra*, 1. c. 421[3]; *Middleman v. Complete Auto Transit Co., supra*, 1. c. 461[4]; *Crook v. Dooley*, 389 S.W.2d 809, 813, 814[6–10] (Mo.1965); *Williams v. Tuttle*, 399 S.W.2d 44, 1. c. 47[1] (Mo. banc 1966).

When so viewed, the evidence pertinent to this appeal may be thus summarized:

The plaintiff introduced, without objection, a plat of the area of the accident which disclosed that 89th Street is an east-west, blacktop roadway approximately 22–24 feet in width. Summit Street is a north-south street ending at 89th, thus forming a "T" intersection. The first streets west of Summit are Western Hills Drive to the south and Madison to the north, at which point an eastbound car crests a hill and starts downgrade towards Summit. The crest of this hill is approximately 375 feet west of the "T" intersection at Summit.

On December 30, 1973, the plaintiff, who had attended a card party with friends and who lived on the south side of 89th Street at about opposite the "T" intersection of Summit, was driven to his home by a friend. At that time, the plaintiff was 71 years old, was retired and was living with his nephew. On the morning in question, the plaintiff's friend drove him westbound on 89th and let him out of the automobile on the northeast corner of 89th and Summit, approximately across from his house. The friend proceeded west on 89th over the crest of the hill at Western Hills Drive. At the point where plaintiff left the automobile, it was necessary to cross 89th Street in order to reach his home. As he stood on the north curb of 89th, the family dog, a beige colored animal about the size of a German shepherd, came up to him and the plaintiff put his hand through the dog's collar to take him home. While in this position on the curb, the plaintiff looked in both directions and saw no automobiles in either direction. He had a clear view of 89th west to the crest of the hill. The intersection

was lighted by a large overhead light suspended over the roadway. The morning was clear and the streets were dry.

The plaintiff started across the street with his dog and did not look again for traffic. He had taken several steps when he saw a "big glare", heard "screeching and banging." and was hit by the left front fender of an eastbound car, spun into the left side and was thrown about 47 feet up against the north curb of 89th.

Plaintiff testified that he was struck in the westbound lane of 89th, but all of the skid marks of the defendant's car were in the eastbound lane and defendant testified he never left that lane prior to impact.

The defendant, a student 20 years of age at the time of trial in 1975, testified that he was eastbound on 89th Street driving a 1968 Oldsmobile at a speed of 35 miles per hour. As he crested the hill west of the point of impact, he was momentarily blinded by the lights of a westbound car and took his foot off the accelerator and started down the hill. He did not give any estimate of his speed thereafter. He stated that when his view was clear of the glare, he saw a dog "very close to the yellow line" and "almost simultaneously" saw the plaintiff holding the dog's collar, both moving south, and walking into the path of his car. He slammed on his brakes and turned his wheels to the right. He did not sound his horn at any time.

On cross-examination, he was asked to mark on the plat the location of his vehicle west of the point of impact when he first observed the dog and plaintiff, and he did so at a point which was approximately 200 to 250 feet west of the point the plaintiff was crossing 89th.

Officer William Forbes of the Accident Investigation Unit of the Kansas City, Missouri Police Department testified that he had specialized training in accident investigation, including the stopping distances of motor vehicles under various conditions. His qualifications were not challenged. He stated that in response to a radio call he was sent to the scene of the accident here involved to make the investigation. At the time he arrived at the scene the plaintiff had been removed to the hospital. The defendant's car was in the south parkway and partially in the driveway of the house just east of the plaintiff's home. Leading back to the west from defendant's car were skid marks 95 feet in length. By a mathematical formula involving the coefficient of friction, the road surface and weather conditions, Officer Forbes testified that at 35 miles per hour (the defendant's statement of his maximum speed) it would require 94.51 feet to bring the defendant's car to a stop. This figure he stated included consideration of the normal reaction time. He stated that the road surface that morning was dry and free from any sand or gravel.

In a case based upon humanitarian negligence the exact point at which an injured person comes into a zone of immediate danger, whether or not plaintiff was oblivious and whether his obliviousness should have been apparent to defendant are generally questions of fact for the determination by the jury. *Leap v. Gangelhoff,* 416 S.W.2d 65, 67[4] (Mo.1967); *Brummet v. Parker,* 509 S.W.2d 10, 13[5] (Mo.1974); *Loyd v. Moore,* 390 S.W.2d 951, 955[7] (Mo. App.1965); *Yarrington v. Lininger,* 327 S.W.2d 104, 108–109[6] (Mo.1959).

In a situation such as that presented by this record, where a pedestrian is moving into a collision course with an approaching automobile, the obliviousness of the pedestrian (plaintiff, here) extends the zone of immediate danger beyond the immediate path of the approaching vehicle. In *Loyd v. Moore,* 390 S.W.2d 951 (Mo.App.1965), recognizing this logical principle, the court stated, l. c. 955[5]:

"* * * And a jury may reasonably find that a plaintiff's zone of imminent peril is widened by reason of his obliviousness, if it further finds that such obliviousness should have been apparent to the defendant. * * *"

In *McDonough v. St. Louis Public Service Company,* 350 S.W.2d 739 (Mo.1961), the court stated, l. c. 743[1]:

"* * * Plaintiff's obliviousness widened the zone of peril considerably beyond the immediate path of the bus and imposed upon the bus driver the duty to act in avoidance when he saw, or by the exercise of the highest degree of care could have seen, plaintiff approaching the path of the bus oblivious of the danger and intent upon continuing into its path. * * *"

Many cases have declared this rule to be a fundamental part of the doctrine of humanitarian negligence. *Williams v. Funke,* 428 S.W.2d 11, 16[7] (Mo.App.1968); *Jordon v. Johnson,* 411 S.W.2d 451, 454[5] (Mo.App. 1967); and *Newell v. Peters,* 406 S.W.2d 814, 821[10] (Mo.App.1966).

In the case at bar, the plaintiff testified that after he looked in both directions before starting across 89th Street with his dog, he was oblivious of the approach of the defendant's car until an instant before impact. While he was unable to place himself at that time other than to state it as his belief that he was still in the westbound lane nearer the center line of 89th than the north curb, the undisputed physical evidence of the skid marks and the testimony of the defendant place him in the eastbound lane in the path of defendant's car when he was struck. It should also be recalled that the evidence showed that this intersection was brightly lighted.

The defendant's testimony in this regard is particularly significant. He stated that he first observed the dog "about the size of a German shepherd", "very close to the yellow line" and that he "almost simultaneously" saw the plaintiff holding the collar of the dog and both walking into the path of his car. Under all reasonable appearances and any reasonable application of the above-stated rule as to the zone of immediate danger, the jury could find that at that moment the plaintiff was in immediate danger.

But the decisive question then presents itself as to where the defendant's automobile was at the time he made these observations. Was he at a place when he made these observations where he could or should have acted to avoid the injury and did he fail to do so? The testimony of plaintiff does not aid in the answer since he did not observe defendant's car until just before the impact. However, the defendant designated the location of his automobile at that time by marking the plat at a point 200–250 feet west of the plaintiff and his dog. Under the expert testimony of Officer Forbes, he could have stopped when traveling at a speed of 35 miles per hour in 94.6 feet. The defendant testified that when he made his observations of the plaintiff's danger he did not honk his horn but turned to the right and applied his brakes. Had he done so at the point where he located his car on the plat, the jury could reasonably find that the accident would not have occurred.

But the defendant argues that the plaintiff's marking of his location on the plat had no probative value but represented only his belief, opinion, guess, or, at best, his estimate. While the courts have held that such estimates or approximations are not to be taken as absolute, "the jury is entitled to take the whole circumstances, correlate the facts and, if such reasonably can be done from the evidence, arrive at a conclusion which may not exactly fit any of the estimates." *Lafferty v. Wattle,* 349 S.W.2d 519, 525–526[4] (Mo.App.1961).

■ Most estimates of speed or distances by any witness or party are approximations representing judgment, at best, but have probative value for whatever weight the jury may give them. *Smith v. Siercks,* 277 S.W.2d 521, 525[3] (Mo.1955); *Lafferty v. Wattle,* 349 S.W.2d 519, 525–526[4] (Mo. App.1961); *Brummet v. Parker,* 509 S.W.2d 10, 13 (Mo.1974); *Fowler v. Robinson,* 465 S.W.2d 5, 9[2, 3] (Mo.App.1971); and *Newell v. Peters,* 406 S.W.2d 814, 821–822[13, 14] (Mo.App.1966).

The distinction between this line of cases and those relied upon by defendant in support of his argument on this point is obvious. In each of those cases the testimony involved was either about a matter which could have been positively stated if it were

within the knowledge of the witness or was so equivocal, indefinite, vague or insubstantial as to destroy its probative value. Such is not the situation in the case at bar. The defendant's testimony and his indication on the plat definitely had probative value as to the location of his automobile when he saw plaintiff. Of course, under the positive, undisputed testimony with the required stopping distance at 35 miles per hour under the circumstances then existing, the jury could also have reasonably found that the defendant could have had time and distance to swerve and even a longer interval of time to sound a warning and thus have avoided injuring plaintiff. *Jordon v. Johnson*, 411 S.W.2d 451, 455–456[7] (Mo. App.1967).

■ For the reasons herein stated, the plaintiff made a submissible case of humanitarian negligence and the court below erred in refusing his instruction on that subject.

The judgment is reversed and the cause remanded for a new trial.

All concur.