**CLAYTON X–RAY COMPANY,**
**Respondent,**

v.

**Martin A. EVENSON, M.D., Appellant.**

**No. WD 44173.**

Missouri Court of Appeals,
Western District.

Jan. 14, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1992.

Application to Transfer Denied
April 21, 1992.

46

Michael W. Manners, Kevin Blackwell, Independence, for appellant.

John E. Turner, Kansas City, for respondent.

Before LOWENSTEIN, C.J., and ULRICH and SPINDEN, JJ.

SPINDEN, Judge.

Martin A. Evenson appeals a jury's determination that he owes Clayton X–Ray Company $14,623.64 in damages for breaching a contract to purchase x-ray equipment. Evenson contends the trial court erred in refusing to submit jury instructions for mutual mistake, commercial impracticability and negligent misrepresentation. We affirm the trial court's judgment for Clayton X–Ray.

We review the evidence in the light most favorable to the party offering the instruction. *Gottlieb v. Szajnfeld,* 550 S.W.2d 936, 937 (Mo.App.1977). The record establishes that in 1983 Evenson, a medical doctor, became interested in acquiring an x-ray machine for his office on the Spelman Memorial Hospital campus in Smithville after he heard that another doctor wanted to purchase x-ray equipment for an office in the same building. The other doctor had discussed purchasing the equipment from Clayton X–Ray, so Evenson inquired of Clayton X–Ray about a machine for his office.

Evenson testified that John Clayton, Clayton X–Ray's owner and president, told him that he had checked the office building's power capacity with Spelman's engineer and that he and the engineer had determined that the building had sufficient power to operate the x-ray equipment being considered by Evenson. He further testified that Clayton assured him that he had done an independent investigation of the building's power supply. Clayton, on the other hand, denied telling Evenson anything more than that he had discussed the

matter with the building engineer and that the engineer believed the power supply was adequate. Clayton testified that he specifically told Evenson that he had not independently investigated the engineer's opinion.

Evenson asserts that he signed a contract to purchase x-ray equipment from Clayton X–Ray for $27,462.50 only because of Clayton's assurances that the building had sufficient power to operate the equipment. In "boiler plate" style type on the contract's backside, the contract stated:

> **INSTALLATION.** The Clayton X–Ray Company agrees to assemble and install ready for use on the premises designated by the Purchaser the apparatus covered by this proposal and to connect same to the wiring system provided by the Purchaser. The Purchaser shall provide all necessary plumbing; carpenter work; ceiling supports and wiring system consisting of conduit, appropriate wires in conduit and appropriate terminations of wires up to the equipment.

Clayton testified that he advised Evenson where the power should be brought in and what the electrical requirements of the equipment were, but he did not agree to do the wiring or the electrical installation.

After he received the equipment, Clayton asked Evenson to arrange a time for the equipment's delivery. Evenson informed Clayton that he had not installed the electrical power necessary to run the machine but that he planned to do so soon. After waiting a year, Clayton X–Ray delivered the machine to Evenson's office even though Evenson still had not installed the wiring system. Evenson had discovered in the meantime that the building's electrical power was inadequate to run the machine and that it would cost approximately $19,500 to cure the problem. Evenson had paid $21,000 of the purchase price, but he quit paying once he discovered how much it was going to cost to install sufficient power.

Clayton X–Ray sued Evenson for breach of contract seeking damages on the unpaid amount of Evenson's account. Evenson counterclaimed, seeking damages for breach of contract and rescission of the contract based on commercial impracticability and mutual mistake. After a jury trial, the jury returned a verdict of $14,623.64 on Clayton X–Ray's claim against Evenson, and a verdict against Evenson on his counterclaim.

Evenson contends the trial court erred in refusing to instruct the jury on mutual mistake. Mutual mistake may be a defense to a contract's enforcement if the parties are mistaken about "a fact which enters into and forms the very basis of the contract." *Smith v. Githens*, 271 S.W.2d 374, 379 (Mo.App.1954). "A mutual mistake is one common to both or all parties, where each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement." *Id.*

■ Evenson argues that, because he and Clayton believed the building had adequate power and because he would not have purchased the equipment had he known of the inadequate power supply, they entered the contract under a mutual mistake. Although that is true, the mistake was not of a material fact forming the basis for the contract. That Evenson's office had sufficient power to operate the equipment was as collateral to the contract as his technician's ability to learn to operate it or the office floor's strength to sustain it.

The object of this contract was the sale and purchase of x-ray equipment. The adequacy and source of electricity were collateral matters. We conclude, therefore, that the misunderstanding concerning the power was not a mutual mistake as to an essential element of the contract.

We further challenge Evenson's characterization of the power problem as a mistake in light of the contract's specific provision that he was responsible for all aspects of the electrical power except for connection of the power source to the equipment. The contract anticipated this type of controversy and settled the issues of who would provide what and who would pay. We conclude that the trial court properly refused to instruct the jury on mutual mistake.

■ For the same reason, we reject Evenson's contention that the trial court erred in refusing to give a jury instruction for commercial impracticability. The *Restatement (Second) of Contracts* § 266(1) (1981) defines commercial impracticability:

> Where, at the time a contract is made, a party's performance under it is impracticable without his fault because of a fact which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty to render that performance arises, unless the language or circumstances indicate the contrary.

In *Missouri Public Service Co. v. Peabody Coal Co.*, 583 S.W.2d 721, 725–26 (Mo. App.), *cert. denied*, 444 U.S. 865, 100 S.Ct. 135, 62 L.Ed.2d 88 (1979), this court asserted that "the doctrine [of commercial impracticability] may be applicable upon the occurrence of a supervening, unforeseen event not within the reasonable contemplation of the parties at the time the contract was made. Such occurrence must go to the heart of the contract." Because Evenson contemplated the power issue, the doctrine is not applicable to his contract with Clayton X–Ray. The trial court properly refused to give the instruction.

■ Finally, Evenson argues that the trial court erred in refusing to give a jury instruction for negligent misrepresentation as part of his affirmative defenses and giving, instead, an instruction for fraudulent misrepresentation. The elements of negligent misrepresentation are:

> (1) that defendant supplied information in the course of his business or because of some other pecuniary interest; (2) that because of a failure by defendant to exercise reasonable care or competence, the information was false; (3) that the information was intentionally provided by defendant for the guidance of a limited group, including plaintiffs, in a particular business transaction; and (4) that in relying on the information, plaintiffs suffered a pecuniary loss.

*Chubb Group of Insurance Companies v. C.F. Murphy & Associates, Inc.*, 656 S.W.2d 766, 783–84 (Mo.App.1983). Evenson argues that Clayton failed to exercise reasonable care or competence because he did not make an independent assessment of the engineer's information before relaying it to Evenson.

Evenson did not plead negligent misrepresentation as an affirmative defense. The trial court properly refused Evenson's negligent misrepresentation instruction because it is error to instruct a jury on a theory not pleaded. *Fisher v. McIlroy*, 739 S.W.2d 577, 580 (Mo.App.1987).

■ Evenson did plead negligent misrepresentation as a counterclaim, and the trial court issued an instruction to the jury on the issue. The only significant difference between the instruction requested by Evenson (No. D) and the one given (No. 12) was that No. D stated, "Your verdict must be for Defendant if you believe [that Plaintiff was negligent in its representation]," and No. 12 stated, "You must assess a percentage of fault to Plaintiff if you believe [that Plaintiff was negligent in its representation]." We conclude that the jury had an opportunity to consider the issue and ruled against Evenson by assessing no percentage of fault to Clayton X–Ray on the issue. Even if it had been error to refuse Evenson's instruction, we would conclude that Evenson was not prejudiced.

Viewing the evidence in the light most favorable to Evenson, we conclude that the trial court correctly refused to give jury instructions for mutual mistake and commercial impracticability. Because Evenson did not plead negligent misrepresentation as an affirmative defense, the trial court correctly refused his instruction on that issue. Affirmed.

All concur.